**In re Eugene Charles PAINTER and Lauretta Marie Painter, Debtors.**

**Bankruptcy No. 483–00368.**

United States Bankruptcy Court,
D. South Dakota.

May 7, 1984.

Joe W. Cadwell, Cadwell, Sanford & Deibert, Sioux Falls, S.D., for debtors.

Robert E. Hayes, Davenport, Evans, Hurwitz & Smith, Sioux Falls, S.D., for McCook County Nat. Bank.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

The above-entitled matter is before the Court on the debtors' motion for determination of secured status. Although this action is more accurately described as one requesting the Court to determine the validity, priority, and extent of liens (an adversary proceeding commenced by filing a complaint rather than a motion), the Court will consider the matter as properly before it because the McCook County National Bank (bank) has not objected. *See* Bankr. R.P. 7001(2), 7003.

The relevant facts are not in dispute. The bank filed a financing statement with the McCook County Register of Deeds on January 20, 1978, thereby perfecting a security interest in the following assets of the debtors: "All equipment, all farm products including but not limited to crops, livestock, supplies used or produced in farming operations, contract rights and accounts," and the proceeds and products thereof. The bank filed a continuation statement with the McCook County Register of Deeds on February 11, 1983.

The debtors contend that the bank's security interest is only perfected in the debtors' farm equipment and not in the other types of collateral described in the 1978 financing statement and the 1983 continuation statement. The crux of the debtors' argument relies on S.D.C.L. § 57A–9–401(1) (1980), the "filing" statute in effect when the bank filed its continuation statement with the Register of Deeds on February 11, 1983:

(1) The proper place to file in order to perfect a security interest is as follows:

(a) When the collateral is equipment used in farming operations or consumer goods, is in the office of the register of deeds in the county of the debtor's residence or if the debtor is not a resident of this state then in the office of the register of deeds in the county where the goods are kept;

(b) When the collateral is goods which at the time the security interest attaches are or are to become fixtures, is in the office where a mortgage on the real estate concerned would be filed or recorded;

(c) In all other cases, in the office of the secretary of state.

Subsection 57A–9–401(1), as quoted above, clearly requires that a security interest in all of the collateral described in the bank's financing and continuation statements, except farm equipment, be perfected by filing a financing statement with the Secretary of State. The debtors argue that the bank is unperfected in collateral other than farm

equipment because the bank cannot file a continuation statement when then-current law required original perfection with the Secretary of State.

The bank, however, while conceding that a new financing statement would have had to have been filed with the Secretary of State, insists that the issue is whether a continuation statement should have been filed with the Secretary of State (a central filing) or with the Register of Deeds (a local filing). In support of its position, the bank cites *In re Barnes*, 15 U.C.C.Rep. Serv. (Callaghan) 956 (D.Me.1974). In *Barnes*, a creditor properly perfected a security interest in a farm tractor under the laws of the State of Maine by filing a financing statement locally. Subsequent to the filing of the original financing statement, Maine's version of U.C.C. § 9–401 was amended to require central filing for farm equipment. Prior to the lapse of its original filing, the creditor with the perfected security interest in the tractor centrally filed a continuation statement, which the Court later determined was sufficient to constitute a continuation statement and a financing statement.

The trustee in bankruptcy challenged the creditor's central filing, insisting that the creditor should have filed locally, the place of the original filing, in spite of the fact that the current law required financing statements to be filed centrally, not locally. Eventually, the *Barnes* Court concludes that the creditor is unperfected and states: "[I]t must be held that §§ 9–401(1) and 9–403(3) require the filing of a continuation statement wherever the original financing statement whose effectiveness is sought to be extended was to have been filed, as determined on the basis of the circumstances, including the applicable law, prevailing at the time the security interest attached." *Barnes, supra* at 964. The Court explained that because the law in effect at the time the original security interest attached required a local filing for farm equipment, a continuation statement cover-

ing that collateral had to be filed locally, in spite of the fact that current law enacted in the interim mandated that financing statements covering farm equipment must be filed centrally for proper perfection.

The bank is correct in its conclusion that the factual situation presented in *Barnes* is closely analogous to the instant case. A security interest was properly perfected. During the period of perfection, amendments to state versions of U.C.C. § 9–401 were enacted, changing the proper place to file a financing statement from a local to a central filing. The affected creditor in *Barnes*, however, filed a continuation and financing statement centrally as required by the new law, while the instant bank filed a continuation statement locally, the filing location mandated when its underlying security agreement attached. The creditor in *Barnes* was determined to be unperfected. It might seem logical that because the instant bank did the opposite from the creditor in *Barnes*, that it must be perfected. Although superficially appealing, this is not necessarily the correct legal conclusion.

Indeed, if one analyzes the facts of *Barnes* and the instant case to a transition between the so-called 1962 version of Article 9 and the 1972 version, the opposite result is reached. For example, if prior law requires a local filing for perfection but current law requires a central filing, any filing that must be renewed after the effective date of the new law cannot be perfected by filing a continuation statement, but can only be perfected by a central filing of a completely new financing statement. The legal authority supporting this example may be found in the Article 9 transition provisions of S.D.C.L. chapter 57A–11 and the related Uniform Commercial Code's drafters' discussion of the official text. *See* S.D.C.L. § 57A–11–105(3) (Supp.1983); U.C.C. app. I, § 11–105 discussion (1977); Comment, *South Dakota's Article Nine: A Time for Change*, S.D.L.Rev. 413, 434–35 (1983).[1]

---

**1.** The Court has contacted the author of the portion of this article dealing with the transition

provisions described in S.D.C.L. chapter 57A–11 (Supp.1983). Apparently, those persons respon-

The Court is fully aware that the transition provisions of S.D.C.L. chapter 57A–11 or similar transition provisions were not applicable or enacted under the facts of *Barnes* or the instant case. But there can be no doubt that had the bank been in a situation of filing a timely continuation statement subsequent to 12:01 a.m., July 1, 1983, they would have been unperfected when their original local filing lapsed. *See* S.D.C.L. § 57A–11–101 (Supp.1983). In any event, it is obvious that the drafters of the Uniform Commercial Code came to the opposite conclusion of the *Barnes* Court when faced with a similar problem.

■ This Court is well aware of the "notice" function performed by a filed financing statement.[2] The South Dakota Legislature, not unlike other state legislatures, has, from time to time, adulterated its otherwise uniform version of U.C.C. Article 9. Prior to the major amendments enacted in 1982 to become effective on July 1, 1983, it provided no transition statutes to guide a creditor who found himself confronted with a change in the filing location for his particular type of collateral. A wise creditor should file new financing statements and continuation statements both locally and centrally. A logical, but more risky, solution finds such a creditor filing a completely new financing statement in harmony with the new law, a conclusion reached by the drafters of the Uniform Commercial Code and ultimately embodied in U.C.C. § 11–105(3).

Given the relatively frequent changes in South Dakota's version of U.C.C. § 9–401,[3] a person exercising reasonable care would check for filings both locally and centrally. Relevant statutes, case law, and equity seem to require as much. Consequently, because one who searched both the local and central files would discover the bank's continuation statement, the "notice" purpose of the Code is met and the bank is properly perfected in any property within the purview of their original financing statement acquired by the debtors prior to 12:01 a.m., July 1, 1983.

■ The bank, however, is not perfected in any property acquired by the debtors subsequent to 12:01 a.m., July 1, 1983. This is true, although security interests that are perfected before July 1, 1983, remain perfected until they lapse, as provided in new S.D.C.L. chapter 57A–9, *see* S.D.C.L. § 57A–11–103 (Supp.1983), because

---

sible for proofing the final draft of the article incorrectly changed several dates in the text without consulting the author. Although the actual amendments to S.D.C.L. chapter 57A–9 were enacted by the legislature in 1982, they did not become effective until 12:01 a.m., July 1, 1983. S.D.C.L. § 57A–11–101 (Supp.1983). A well-meaning but mistaken proofreader substituted the 1982 date for the 1983 date in the text of the article, with incorrect conclusions resulting. Therefore, the following corrections are necessary to make the article read as it was intended: (1) The "1982" on line 4 of p. 418 should be 1983; (2) The "1982" on line 5 of p. 418 should be 1983; (3) The "1982" on line 8 of p. 418 should be 1983; (4) The "1982" in the third line and the fifth line of the last paragraph on p. 434 should both be changed to 1983; (5) The "1982" on line four and on line nine of p. 435 should both be changed to 1983; and (6) The "1985" on line 17 of p. 435 should be "1986." As corrected, the article accurately summarizes the effects of the transition provisions of S.D.C.L. chapter 57A–11.

**2.** *See In re Pelletier,* 5 U.C.C.Rep.Serv. (Callaghan) 327, 335 at n. 7 (D.Me.1968):

It should be remembered that the Uniform Commercial Code contemplates a 'simplified' system of *notice* filing. Courts ought not adopt rules of filing which fail to advance, if they do not actually obstruct, the sole reason for requiring filing—the giving of notice to those not privy to the security transaction. A reasonable measure of protection of the rights of third persons requires that the rules governing the place of notice filing describe some logical course between the transaction and the filed notification of it. This is especially true under the highly decentralized, unnecessarily duplicative and rigidly categorized system of filing adopted in this State. See 11 MRSA § 9–401.

**3.** *See* 1966 S.D.Sess.Laws, ch. 150, § 9–401; S.D.C.L. §§ 57–38–1, 57–38–2 to 57–38–6; 1974 S.D. Sess. Laws, ch. 6, §§ 4, 10; 1979 S.D.Sess.Laws, ch. 339, §§ 1, 3; S.D.C.L. § 57–38–1.1; 1980 S.D.Sess.Laws, ch. 346, §§ 1, 6, 7; S.D.C.L. § 57A–9–401 (1980); 1982 S.D.Sess.Laws, ch. 347, § 26.

S.D.C.L. § 57A–11–105(2) (Supp.1983)[4] expressly states that any effective financing statements or continuation statements which were filed prior to July 1, 1983, only apply to property the debtors acquire after that date to the extent that the filing is in the office that would be appropriate to perfect the security interests in the new collateral under the 1983 Act (new S.D.C.L. chapter 57A–9).

It must be noted that the 1983 Act introduces a new section 57A–9–401 (Supp.1983) which requires central filing for all of the instant bank's claimed collateral except farm equipment used in a farming operation. Thus, it is apparent that the bank does not have a perfected security interest in the balance of collateral listed on the original financing statement, as continued, acquired after 12:01 a.m., July 1, 1983. An express purpose for allowing over a one-year transition period between the enactment of the 1983 Act in 1982 and its effective date is to allow time for required refilings. U.C.C. app. I, § 11–101 discussion (1977). The bank's failure to file a new financing statement with the Secretary of State and thereby perfect its interest in property the debtors acquired after 12:01 a.m., July 1, 1983, cannot be blamed upon confusion created by the legislature. The transition provisions of S.D.C.L. chapter 57A–11, in general, and section 57A–11–105(2) (Supp.1983), in particular, put the bank on notice that a new centrally filed financing statement was necessary to perfect a security interest in certain types of collateral acquired by the debtors subsequent to 12:01 a.m., July 1, 1983.

In conclusion, the bank has a perfected security interest in the collateral described by its original financing statement to the extent that this collateral was acquired prior to 12:01 a.m., July 1, 1983. The bank, however, does not have a perfected security interest in collateral other than farm equipment acquired subsequent to 12:01 a.m., July 1, 1983.

Accordingly, all of the above constitutes the Court's Findings of Fact and Conclusions of Law in the above-entitled matter pursuant to Bankr.R.P. 7052 and 9014 and F.R.Civ.P. 52. Both counsel for the debtors and counsel for the bank are directed to submit a proposed Order and Judgment, consistent with the Court's Findings of Fact and Conclusions of Law, in accordance with Bankr.R.P. 9021. The Orders and Judgments must be submitted to the Clerk of this Court forthwith.

---

4. With respect to any collateral acquired by the debtor subsequent to ~~the effective date of this Act~~ July 1, 1983, any effective financing statement or continuation statement described in this section shall apply only if the filing or filings are in the office or offices that would be appropriate to perfect the security interests in the new collateral under this *1983* Act. S.D.C.L. § 57A–11–105(2) (Supp.1983).
*See also* U.C.C. app. I, § 11–105 discussion (1977):

Subsection (2) makes clear that all existing financing statements and continuations on the effective date remain valid for the remainder of the five years *as to existing collateral*, even though the appropriate place for filing may have changed under the new rules for accounts, general intangibles, etc. The existing filings also apply to new collateral acquired after the effective date, unless the appropriate filing place is different under the new rules. In that case there will have to be a new filing on the effective date to catch new collateral.