**In re John G. TODD and Alice L. Todd, Debtors,**

**John G. TODD and Alice L. Todd, Plaintiffs,**

v.

**PRODUCTION CREDIT ASSOCIATION OF the MIDLANDS/FARM CREDIT SYSTEM CAPITAL CORPORATION, Defendant.**

**Bankruptcy No. 86–01031S.**
**Adv. No. 86–0259S.**

United States Bankruptcy Court,
N.D. Iowa.

Dec. 22, 1986.

Craig A. Raby, Sioux City, Iowa, for debtor.

Keith G. Thompson, Sheldon, Iowa, for PCA/Farm Credit Systems.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge, Sitting by Designation.

The matter before the court is an adversary proceeding commenced on July 2, 1986, to determine the secured status of Production Credit Association of the Midlands/Farm Credit System Capital Corporation (PCA) in property of John and Alice Todd (Debtors). The dispute is essentially twofold: whether PCA's security interest in the Debtors' chattels is perfected and whether the proper amount of a real estate mortgage is $100,000.00, as indicated on the face of the mortgage. A trial was held before the undersigned on December 2, 1986. The facts, as material to these issues, are as follows:

### Findings of Fact

**1.**

The Debtors are farmers who, over a number of years had an on-going debtor-creditor relationship with PCA and in connection therewith entered into various loan transactions. In evidence are three security agreements all signed by the Debtors dated December 23, 1981, December 17, 1982, and January 8, 1985, respectively. Also in evidence are two financing statements and two continuation statements. It is these statements which lie at the heart of the perfection issue.

On November 1, 1966, PCA filed with the Cherokee County Recorder a financing statement, executed by PCA and the Debtors. This financing statement numbered G 811, covered the following property:

All of the Debtor's livestock.

All of the Debtor's farm and ranch machinery and equipment.

All of the Debtor's crops now growing or hereafter to be grown (specific real estate description was also included)

Grain on hand.

All of the Debtor's feed for livestock.

On October 22, 1971, PCA filed a continuation statement of the G 811 1966 financing statement, with the Cherokee County Recorder.

On October 15, 1976, PCA filed a financing statement with the Iowa Secretary of State. This financing statement covered the same collateral as did the 1966 financing statement. Part 7 of this 1976 financing statement reads as follows:

7 Use only for transitional farm collateral and farm equipment filings.

Check only one.

☐ Prior county filing(s) with respect to the described transitional farm related collateral (true copies of which are attached) were properly made and are still effective. . . .

The above box was checked by PCA and the financing statement was signed by a PCA officer. PCA alleges in its brief that "the 1976 filing was in fact accompanied by both a copy of the 1966 original filing and the 1971 continuation statement, as filed in the office of the Cherokee County Recorder". Although the formal evidence does not support this statement, copies of the 1966 and 1971 statement were forwarded to this court and represented by PCA as having been filed with the Secretary of State. Because the Debtors do not dispute PCA's position in this regard, the court will proceed on the assumption that the 1976 filing was accompanied by copies of the 1966 and 1971 documents.

On October 28, 1981, PCA filed a continuation statement with the Iowa Secretary of State. The statement, a carbon copy of which is in evidence, indicates that the continuation statement refers to original financing statement number "11 G1033 (original)" filed on November 1, 1966, with the Cherokee County Recorder. Above the typed-in reference to "11 G1033 (original)", is hand written the number "G 265451" which also came through on the carbon copy.

### 2.

Also in evidence is a real estate mortgage on the Debtors' land in Cherokee County, Iowa. The mortgage on its face purports to secure an advance of $100,-000.00 evidenced by a promissory note dated December 30, 1983. The Debtors, while acknowledging signing this mortgage, assert that it was signed in blank sometime in the latter part of December, 1984, rather than on January 8, 1985, the date appearing on the document itself. They further assert that the mortgage was given to secure a $25,000.00 note which they again claim was signed in December, 1984, rather than on January 8, 1985, the date appearing on the note. The value of the debt secured by this mortgage is a question of fact, resolution of which requires untangling a number of loan documents, none of which were explained in great detail at trial.

On December 30, 1983, the Debtors gave PCA a line of credit note in the principal sum of $100,000.00. By December, 1984, they were at the peak of their $100,000.00 credit line and were anticipating further expenses for the upcoming 1985 year. In December, 1984, a meeting was held between Dean Dreessen, a PCA loan officer and the Debtors. A financial statement showing the Debtors' asset to debt ratio as of December 12, 1984, caused PCA to believe it needed further security if it was to continue financing the Debtors and provide them with additional margin to cover anticipated future expenses. Dreessen told the Debtors that PCA would need further security in view of the Debtors' four year history of losses and suggested a second real estate mortgage. The Debtors, while reluctant to go along with a pledge of real property, ultimately agreed. Dreessen then prepared the documents necessary to renew the 1983 note and extend the line of credit to cover the Debtors' anticipated 1985 expenses and take care of accrued interest. In evidence are: an application for loan renewal, dated January 8, 1985, and signed by the Debtors, a balance sheet dated January 8, 1985, and signed by the Debtors, a term note in the sum of $25,-000.00 dated January 8, 1985, and signed by the Debtors, a line of credit note in the sum of $110,000.00 dated January 8, 1985, and signed by the Debtors, and finally, the disputed $100,000.00 mortgage dated January 8, 1985, and signed by the Debtors.

Both Debtors maintain that the mortgage was signed in blank in December, 1984, as was the $25,000.00 note and the other documents. The Debtors testified at trial that it was their understanding that the $100,000.00 mortgage should have been in the sum of $25,000.00 as it was meant to cover the $25,000.00 term note.

Dreessen stated that all documents were prepared by him in advance of the January 8, 1985 date but that they were actually signed on the date indicated. It is observed by the court that the signatures of the Debtors appearing on the mortgage are notarized as of January 8, 1985. Mr. Dreessen further denied that any documents were blank at the time of signing and that he has never asked anyone to sign anything in blank.

The $110,000.00 note was a renewal of the 1983 $100,000.00 credit line note with the additional $10,000.00 reflecting an increased credit line. The $110,000.00 figure was based upon the Debtors anticipated future twelve month needs. The $25,000.00 term note was given to cover interest accrued on the Debtors' previous credit line plus anticipated advances. At the time of preparing the mortgage in December, the only note in existence was the 1983 credit line note and it was PCA's policy that each mortgage had to refer to a specific note, so in preparing the mortgage document, Dreessen tied the the $100,000.00 mortgage into the 1983 note because at the time it was the only note in existence. Later, after the mortgage had been recorded and the $25,000.00 term note and the $110,000.00 credit line renewal notes had been signed, PCA made a notation on the front of the two notes reflecting they were secured by the $100,000.00 real estate mortgage.

Although the Debtors claim the mortgage and other documents were signed in blank on December, 1984, the court does not believe their recollection to be persuasive. Mr. Dreessen's testimony coupled with an examination of the documents themselves causes this court to believe that the documents, including the notes and mortgage, were signed on January 8, 1985, and were complete when signed. The mortgage, when signed, did reflect it was given to secure repayment of the 1983 line of credit note in the sum of $100,000.00. Accordingly, the court finds as a matter of fact that the mortgage dated January 8, 1985 is a correct statement of the obligation secured.

*Conclusions of Law*

1.

While the court's Findings of Fact with regard to the circumstances of the note and mortgage execution is dispositive of the issue, a brief evidentiary comment should be made in explanation of why the court found the facts as it did.

 It is generally accepted law that a presumption exists in favor of the correctness and genuineness of writings and the presumption also favors the validity and regularity of the documents. 31A C.J.S. *Evidence* § 150 (1964). A written instrument is also presumed to be executed on its date. *Id.;* S. Gard, *Jones on Evidence* § 3:40 (1972). Presumptions, however, are subject to being rebutted. Going into the trial the Debtors were faced with the presumption that the mortgage was correct as stated and it was their burden to rebut this presumption. The burden of overcoming a presumption must be cured by evidence stronger than a mere preponderance, clear and convincing evidence is necessary. *See In re Givens' Estate,* 254 Iowa 1016, 119 N.W.2d 191, 194–95 (1963). In this instance, the Debtors have failed to convince the court, even by the lesser preponderance of the evidence standard, that the documents were incomplete when signed or that they were signed on any other date than January 8, 1985. Where testimonial evidence is equally balanced at trial, as it was in this case, the party against whom the presumptions fall has not met its burden and cannot recover. 30 Am.Jur.2d *Evidence* § 1165 (1967). Hence this court's finding that the value of the mortgage is $100,000.00.

## 2.

■ The dispute concerning whether PCA's security interest is properly perfected is precipitated by a change in Iowa law, whereby the place of filing for a financing statement covering farm equipment, farm products, and accounts, contract rights, or general intangibles arising from or relating to the sale of farm products, was changed from the county recorder's office to the office of the Secretary of State. Section 554.11105 of the Iowa Code governs the transitional period, and is the applicable law in resolving the perfection issue. Section 554.11105, in pertinent part, provides as follows:

1. Except as provided in subsection 5, a filed financing or continuation statement which has not lapsed or been terminated prior to January 1, 1975, shall remain effective for the period provided in this chapter prior to amendment, but not less than five years after the filing.

. . . . .

3. The effectiveness of any financing statement or continuation statement filed prior to January 1, 1975, may be continued by a continuation statement as permitted by this chapter as amended, except that if this chapter as amended requires a filing in an office where there was no previous financing statement, a new financing statement conforming to either section 554.9402 or subsection 8 shall be filed in that office.

. . . . .

5. If collateral consists of equipment used in farming operations, or farm products, or accounts, contract rights, or general intangibles arising from or relating to the sale of farm products by a farmer, the place of effective filing is as follows:

a. Filings in the office of a county recorder which have not lapsed or been terminated prior to January 1, 1975, retain their effectiveness unless subsequently lapsed or terminated until January 1, 1980; however, on or after January 1, 1975, continuation statements are not to be filed in the office of a county

recorder, and effectiveness can be continued only through the filing in the office of the secretary of state of a financing statement which complies with section 554.9402 or, if filed before January 1, 1980, with subsection 8; the effectiveness of such financing statements is to be continued through continuation statements which comply with section 554.-9403, subsection 3; a prior county filing ordinarily may be continued in the office of the secretary of state only in the final six months of its effectiveness at the county level; however, if there were multiple filings in different counties with respect to the same secured transaction, the multiple filings may be consolidated into a single filing in the office of the secretary of state if any one of the multiple county filings is in the final six months of its effectiveness at the county level;

. . . . .

8. Where indicated by this section, a financing statement which otherwise complies with section 554.9402 may be signed by either the secured party or the debtor provided that the financing statement is accompanied by a carbon, photocopy, or other suitable reproduction of an effective prior filing, and evidence of proper prior filing, and states that the prior filing is still effective....

Iowa Code Annotated § 554.11105 (Supp. 1986).

PCA filed a financing statement with the Secretary of State on October 15, 1976, in conformity with the requirements of section 554.11105. PCA then filed a continuation statement on October 28, 1981. Subpart 5(a) of section 554.11105 states that financing statements filed with the Secretary of State are to be continued through the filing of continuation statements. Section 554.9403(2) of the Code provides that a financing statement is effective for a period of five years from the date of filing, and unless a continuation statement is filed prior to that time, the financing statement lapses. *State Sav. Bank v. Onawa State Bank*, 368 N.W.2d 161, 164 (Iowa 1985).

PCA did not file its continuation statement within five years of the date the financing statement was filed with the Secretary of State. Nevertheless, PCA argues that if the 1966 county financing statement is considered as the base financing statement, and if the 1976 filing is considered to be a continuation statement, then its 1981 continuation statement would be timely and effective. If one accepts PCA's interpretations, it position, as to an effective 1981 continuation is correct. However, the court does not agree that the 1966 financing statement is the bench mark financing statement. Instead, the court concludes that the 1976 financing statement is a "new" financing statement from which the five year continuation period is calculated.

Financing statements and continuation statements serve distinct and different purposes. *In re Hays*, 47 B.R. 546, 549 (Bankr.N.D.Ohio 1985). Section 554.11105, subpart 5(a) and subpart 8 of the Iowa Code specifically require that a "financing statement" be filed with the Secretary of State. The court notes that no provision is made which allows for the filing of continuation statements with the Secretary of State until *after* a new financing statement is filed. Thus, pursuant to section 554.-9403(2)[1] of the Iowa Code, the five-year time period begins to run from the time that the new financing statement is filed.

The court's position is further bolstered by *In re Painter*, 39 B.R. 544, 546 (Bankr. D.S.D.1984). South Dakota enacted transition legislation similar to that of Iowa's.[2] However, in *Painter*, a local continuation statement was deemed effective because it was filed prior to the effective date of the transition legislation. Nevertheless, Bankruptcy Judge Ecker, in dicta, stated that:

if prior law requires a local filing for perfection but current law requires a central filing, any filing that must be renewed after the effective date of the new law cannot be perfected by filing a continuation statement, but can only be perfected by a central filing of a *completely new financing statement*. The legal authority supporting this example may be found in the Article 9 transition provisions of S.D.C.L. chapter 57A-11 and the related Uniform Commercial Code's drafters' discussion of the official text.

*Id.*, at 546. (emphasis added).

Based upon this court's opinion that the 1976 financing statement is a "new" financing statement, and thus the bench mark from which the five-year continuation period begins to run, the 1981 continuation

**1.** (2) A filed financing statement which states a maturity date of the obligation secured of five years or less is effective until such maturity date and thereafter for a period of sixty days. Any other filed financing statement is effective for a period of five years from the date of filing. The effectiveness of a filed financing statement lapses on the expiration of such sixty-day period after a stated maturity date, or on the expiration of such five-year period, as the case may be, unless a continuation statement is filed prior to the lapse. Upon such lapse the security interest becomes unperfected. A filed financing statement which states that the obligation secured is payable on demand is effective for five years from the date of filing.

**2.** (1) A financing statement or continuation statement filed prior to July 1, 1983 which shall not have lapsed prior to July 1, 1983 shall remain effective for the period provided in Title 57A, but not less than five years after the filing.

(2) With respect to any collateral acquired by the debtor subsequent to July 1, 1983, any effective financing statement or continuation statement described in this section shall apply only if the filing or filings are in the office or offices that would be appropriate to perfect the security interests in the new collateral under this 1983 Act.

(3) The effectiveness of any financing statement or continuation statement filed prior to July 1, 1983 may be continued by a continuation statement as permitted by this 1983 Act, except that if this 1983 Act requires a filing in an office where there was no previous financing statement, a new financing statement conforming to § 57A-11-106 shall be filed in that office.

(4) If the record of a mortgage of real estate would have been effective as a fixture filing of goods described therein if this 1983 Act had been in effect on the date of recording the mortgage, the mortgage shall be deemed effective as a fixture filing as to such goods under subsection (6) of § 57A-9-402 of this 1983 Act on July 1, 1983.

statement was not filed within the five-year period and consequently lapsed.

Accordingly, and for the reasons stated herein, IT IS ORDERED that Production Credit Association of the Midlands/Farm Credit System Capital Corporation's mortgage dated January 8, 1985, in the amount of $100,000.00 is a correct statement of the obligation secured. IT IS FURTHER ORDERED that the security interest of Production Credit Association of the Midlands/Farm Credit System Capital Corporation in property of the Debtors including livestock, farm and ranch machinery and equipment, crops now growing or hereafter to be grown, grain on hand, and feed for livestock, is not perfected.

LET JUDGMENT BE ENTERED ACCORDINGLY.