In re Catherine **BURNHAM**, Debtor.

**David O. Simon, Trustee, Plaintiff,**

v.

**First Union Mortgage Corporation, Defendant.**

**Bankruptcy No. 98–16716.
Adversary No. 98–1363.**

United States Bankruptcy Court, N.D. Ohio, Eastern Division.

March 8, 1999.

Steven S. Davis, Cleveland, OH, for plaintiff.

Donald C. McFadden, Cleveland, OH, for defendant.

### MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

Plaintiff, Trustee, filed his Complaint To Determine Priority, Validity And Extent Of Liens And Interests And To Set Aside Mortgage [the Complaint] in the above-styled Chapter 7 case. Upon the conclusion of a trial proceeding, an examination of the evidence adduced, and the record, generally, the following findings of fact and conclusions of law are hereby rendered.

Core jurisdiction is acquired for the determination of this proceeding pursuant to provisions of 28 U.S.C. § 157(b), § 1334, and General Order No. 84 of this district.

In an effort to refinance her home mortgage, Catherine Burnham (the Debtor) obtained a loan from Defendant First Union Mortgage Corporation (First Union) which was secured by her personal residence located at 16344 Birchcroft Drive, Brook Park, Ohio 44142. The closing occurred on February 11, 1997, for a mortgaged amount of $84,000.00. The Trustee asserts that the mortgage deed was defectively executed by First Union, as it was not executed in the presence of two witnesses and not before a Notary Public as required under O.R.C. § 5301.01 (Complaint, Para. No. 10). Under provisions of 11 U.S.C. § 544 and O.R.C. § 5301.01, the Trustee further asserts that the mortgage deed is avoidable since it was unperfected as of the petition filing date.

First Union concedes that it possesses a first mortgage lien on the subject property, but denies that the mortgage is avoidable. It asserts that its mortgage was properly executed under Ohio law and that the Complaint fails to state a cause of action

upon which relief can be granted. In resolving this matter, the Court must determine whether First Union possesses a security interest in the subject mortgage which is not avoidable by the Trustee's avoidance powers under § 544 of the Bankruptcy Code [11 U.S.C. § 544]. The burden of proof in such matters is upon the party who challenges the validity of the document in question. Herein, that burden is upon the Trustee who contends that First Union's mortgage deed was improperly executed under applicable Ohio law. The burden must be met by a clear and convincing evidence standard. *Ford v. Osborne*, 45 Ohio St. 1, 12 N.E. 526, 527 (Ohio 1887); *Paramount Finance Co. v. Berk*, 179 N.E.2d 788 (Ohio App.1962).

■ In support of its allegations, the Trustee solicited the testimony of the Debtor. Her testimony was generally credible and revealed that she has owned her home some 31 years. At one point in time, she had paid off the original mortgage but later executed home equity loans against her property on a few occasions. It is uncontested that First Union holds the first mortgage lien on her residence. Upon being shown a copy of the mortgage deed in question (Jt.Ex.1), the Debtor was familiar with it and recognized her signature which she signed on February 11, 1997 at the Tower City Title Company. During her signing of the document, she testified that only one person, the closing agent, was in the room when she signed the mortgage and other closing documents. Another individual did enter the room momentarily to retrieve something but exited before she signed any documents. That individual was not known to her, and they were not introduced. She estimates the closing transaction took approximately thirty minutes. Upon completion of the signings, the closing agent gave her two candy bars and she left the premises. (Debtor, Direct).

Upon cross-examination, the Debtor was unable to identify John T. Parker in the courtroom. Mr. Parker is a closing agent for Tower City Title and handled the subject loan closing on February 11, 1997. However, her testimony in this regard was consistent with her sworn testimony given during the § 341 creditors meeting on October 7, 1998. Therein, she testified that only one individual was present when she signed the closing papers, including the mortgage. (See, § 341 Transcript, p. 6, Lines 6–20; p. 7, Line 7–9). Further, her trial testimony in this regard is consistent with her deposition testimony (Depo., C. Burnham, p. 16, Line 2). The only time the closing agent left the room where the signing occurred was when he went for the two candy bars he gave her.

The Debtor's testimony was followed by the testimony of Jonathan Parker who testified that he was a closing agent for Tower City Title and notarized the subject mortgage deed. He also witnessed the document. (Parker, Direct). He recalled this particular closing and recognized the Debtor in the courtroom, as it was one of few such closings he had transacted in the office. Most of his closings occurred in the mortgagors' homes. Contrary to the Debtor's testimony, he testified that one Giancarlo Miceli was with him throughout the subject closing and Miceli only left the room to get the two candy bars for the Debtor at the end of the closing. He estimated that he had conducted between 1,000 to 1,200 mortgage closings during his three-year tenure with Tower City Title.

Upon inquiry, he was familiar with the subject mortgage deed and recognized his signature as a witness along with the signature of Giancarlo Miceli. Unequivocally, he testified that Miceli was present in the room when he (Parker) witnessed and notarized the signing.[1] Miceli sat to his left and verified the signing as he (Parker) had the Debtor execute each closing document, including the mortgage (Parker, Cross–Exam.). During the closing, Miceli made no comments, as he does not speak English well, other than being introduced to the Debtor at closing (Id.). Parker stated that the closing went "smoothly" and that he could not recall the Debtor asking any questions. Lastly, he was certain that Miceli gave the Debtor candy bars and not himself. (Parker, Re–Direct).

1. G. Miceli, an Italian national, was out of the country and was not in attendance at the trial. The parties stipulated to the authenticity and admissibility of his deposition testimony into evidence.

Marilyn Manarino, the president of Tower City Title, testified that Miceli is her nephew who lives in Italy. On two separate occasions, covering an estimated seventeen-month period, Miceli lived with her and worked at her company as a paid witness. He did nothing but witness document signings. He was paid, on average, ten dollars for each document he witnessed. She, personally, was not in the room when the Debtor's closing occurred. However, the Company's policy in this regard required notarization and attesting by two witnesses in the presence of the notary. She believed this policy was adhered to in the instant case. On three separate occasions she recalls issuing memos to her employees to insure that this policy was adhered to (Manarino, Cross–Exam.).

Through an interpreter, deposition testimony was taken of Giancarlo Miceli on November 13, 1998 in Cleveland, Ohio. Among other matters, his deposition testimony revealed that he was in the United States "... just this few days for a witness ... as a witness." (Depo., Miceli, p. 5, L.23–25). He was helping his Aunt as a witness in February of 1997. He was present with the notary in 1997 when he met the Debtor, Catherine Burnham. He remembered the Debtor as being a large white lady and as tall as his Aunt. He remembered the Debtor coming into the room and signing the document (Id., p. 7, L.5–8). Other than saying "Glad to meet you.", to the Debtor, Miceli made no other comments during the closing. He did not recall if the Debtor said anything to him. Upon being shown the subject mortgage deed, he recognized his signature (Id., p. 7, L.23). Catherine Burnham and the notary were present when he signed as a witness. (Id., pp. 7–8, L.25–1). He observed her sign the mortgage, but he made no comments to her. He remained in the room throughout the closing. As the Debtor stood to depart, he recalled asking her to wait for a second while he went to get two candy bars for her, as a usual courtesy to their clients. (Id., p. 8, L.11–18). Throughout the closing transaction, he, the Debtor, and the notary (John Parker) were seated. (Id., p. 10, L.25, p. 11, L.1). He was seated on the side of the desk facing the debtor.

Miceli worked at Tower City Title for a year and six months as a paid witness, and witnessed more than ten mortgages or deeds per month (Id., p. 11, L.24). He could not recall if the closing occurred during the morning, but it was during the day. (Id., L.16–17).

Section 544(a)(1) of the Bankruptcy Code [11 U.S.C. § 544(a)(1)] permits a trustee to avoid a transfer of property of the debtor or any obligation incurred by the debtor that is voidable by a hypothetical judicial lien holder as of the commencement of the case.

> The trustee shall have, as of the commencement of the case, and *without regard to any knowledge of the trustee or any creditor,* the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.

11 U.S.C. § 544(a)(1) (emphasis added). The court in *Bash v. Check (In re Check),* 129 B.R. 492 (Bankr.N.D.Ohio 1991) held that, under Ohio law, an invalid lien is binding only between the parties and is not effective against a valid judgment lien and against the trustee in his capacity as a hypothetical judicial lien creditor. *See also, Hofacker,* 34 B.R. at 607.

Ohio Revised Code Section 5301.01 provides that;

> A deed, mortgage, land contract as referred to in division (B)(2) of section 317.08 of the Revised Code, or lease of any interest in real property and a memorandum of trust as described in division (A) of section 5301.255 of the Revised Code shall be signed by the grantor, mortgagor, vendor, or lessor in the case of a deed, mortgage, land contract, or lease or shall be signed by the settler and trustee in the case of a memorandum of trust. The signing shall be acknowledged by the grantor, mortga-

gor, vendor, or lessor, or by the settler and trustee, *in the presence of two witnesses, who shall attest the signing and subscribe their names to the attestation*. The signing shall be acknowledged by the grantor, mortgagor, vendor, or lessor, or by the settler and trustee, before a judge or clerk of a court of record in this state, or a county auditor, county engineer, notary public, or mayor, who shall certify the acknowledgment and subscribe his name to the certificate of the acknowledgment.

ORC § 5301.01 (Emphasis added). The dispositive issue is not a novel one. The court in *Citizens Nat. Bank in Zanesville v. Denison*, 165 Ohio St. 89, 133 N.E.2d 329 (1956) held that an improperly executed mortgage is not entitled to be recorded and is not constructive notice as to subsequent mortgagees. Further, the court in *In re Hofacker*, 34 B.R. 604 (Bankr.S.D.Ohio) noted that "Ohio Courts have consistently held that a mortgage which is attested by only one witness is invalid." *See Wright v. Franklin Bank*, 59 Ohio St. 80, 51 N.E. 876 (1898).

In *Coshocton National Bank v. Hagans*, 40 Ohio App. 190, 178 N.E. 330 (1931), the court addressed a dispute as to the validity of a mortgage. Finding that the mortgage on its face was apparently duly executed and recorded, the court concluded that "[the mortgage] carries with it a presumption of validity, and in order to destroy its effect as a mortgage, it must be shown to be defective by the contestors, and by a preponderance of the evidence."

The *Coshocton* court observed that:

The notary and witnesses testified that they had no independent knowledge or recollection of the incidents surrounding its signing and acknowledgment, but they all testified that they never affixed their signatures to any instrument as witnesses or as notary unless the parties were present and signed in their presence. This is all that could reasonable be expected under the circumstances, and a positive statement of an inflexible rule always adhered to by a notary or witness must carry great weight in the consideration of their evidence.

*Coshocton*, 178 N.E. at 330. The court in *In re Todd*, 70 B.R. 204, 207 (Bankr.N.D.Iowa 1986) found a mortgage to be the correct statement of the obligation secured. The court, in support of its findings of fact stated;

It is generally accepted law that a presumption exists in favor of the correctness and genuineness of writings and the presumption also favors the validity and regularity of the documents. 31A C.J.S. Evidence S 150 (1964).... Presumptions, however, are subject to being rebutted. Going into the trial the Debtors [are] faced with the presumption that the mortgage was correct as stated and it was their burden to rebut this presumption. The burden of overcoming a presumption must be cured by evidence stronger than a mere preponderance, clear and convincing evidence is necessary. *See In re Givens' Estate*, 254 Iowa 1016, 119 N.W.2d 191, 194–95 (1963).... Where testimonial evidence is equally balanced at trial, as it was in this case, the party against whom the presumptions fall has not met its burden and cannot recover. 30 Am.Jur.2d Evidence S 1165 (1967).

*In re Todd*, 70 B.R. at 207; See, *Rowray v. Casper Mut. Building & Loan Ass'n*, 48 Wyo. 290, 45 P.2d 7 (1935); See also, *In re Adkins*, 28 B.R. 554, 558 (Bankr.N.D.Miss. 1983) (recognized presumption of regularity of an acknowledgment).

The court in *Paramount Finance Co. v. Berk*, 179 N.E.2d 788 (Ohio App.1962) addressed a challenge to the acknowledgment and attestation of a facially valid mortgage. In *Paramount*, the party challenging the validity of the mortgage claimed that the mortgagor did not acknowledge the instrument before a notary public and that the instrument was not signed in the presence of two witnesses. The court determined that, under Ohio law, testimony by mortgagors, as a matter of law, cannot overcome a certificate of acknowledgment. The Court further held that "since the evidence relating to acknowledgment is confined to the testimony of the mortgagors in the case, it is not sufficient to support a finding contrary to the certificate of acknowledgment and the affirmative testimony of the notary himself." (*Id.*). Because

a facially valid acknowledgment cannot be controverted solely by the testimony of a mortgagor, the "affirmative testimony" referred to by the *Paramount* court necessarily refers to testimony by the notary as to the proper attestation of the disputed mortgage.

In the present proceeding, the Trustee failed to demonstrate that the subject mortgage was invalid by the clear and convincing evidentiary standard. Concurring with the decision in *Paramount*, this higher standard of proof is more appropriate than a lesser standard of proof in such matters. Essentially, a resolution of this proceeding hinges on the reliability of the Debtor's testimony against the testimony of Miceli and Parker who both testified independently of each other that Miceli was in the signing area and attested the mortgage as a witness. The Trustee presented no other witness to corroborate the Debtor's testimony. Being reposed with the burden of proof to support his Complaint allegations that there was a defective attestation, without more, the Trustee cannot successfully maintain his action by the lesser preponderance of the evidence standard.

The subject mortgage contains the names of two witnesses and is properly acknowledged in accordance with Ohio law. O.R.C.'s 301.01. It is also cloaked with a presumption of validity which cannot be overcome unless clear and convincing evidence is otherwise shown. *In re Todd, supra.* Herein, the testimony of both closing witnesses and the notary effectively controverted the allegations of a defective mortgage execution. *Paramount, supra.* Where the complaint allegations in this regard are sufficiently controverted by credible trial witnesses, a complainant's burden of presenting persuasive evidence by a clear and convincing evidence standard is insurmountable. *Paramount, supra.* (A facially valid acknowledgment cannot be controverted so aptly by the testimony of a mortgagor.).

## CONCLUSION

Notwithstanding the avoidance powers available to the Trustee under § 544(a) of the Bankruptcy Code, the Trustee's failure to prove the existence of a defectively executed mortgage by clear and convincing evidence renders lien avoidance under § 544(a) unavailable. Judgment is hereby rendered in favor of the Defendant, First Union. Each party is to bear its respective costs.

IT IS SO ORDERED.