**In re Anthony SALAMONE and Cassandra Salamone, Debtors.**

**Richard Baumgart, Trustee, Plaintiff,**

v.

**Ford Consumer Finance, et al., Debtors.**

Bankruptcy No. 98–10235.
Adversary No. 98–1199.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

March 15, 1999.

---

Robert D. Barr, Dettelbach, Sicherman & Baumgart, Cleveland, Ohio, for plaintiff.

Amelia A. Bower, Cleveland, Ohio, for defendant.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

In this Chapter 7 proceeding, Richard Baumgart (the Trustee) seeks avoidance of a mortgage lien pursuant to provisions of 11 U.S.C. § 544, 547, 550 and 551. Upon conclusion of a trial and an examination of the record, generally, the following findings and conclusions are hereby rendered.

Herein, the Trustee asserts that the Defendant, Ford Consumer Finance, NKA Associates Home Equity Services (Ford) was given a mortgage lien by Anthony and Cassandra Salamone (the Debtors) two months before they filed their petition for relief under Chapter 7.[1] The Trustee further asserts that the mortgage was not properly witnessed and executed in accordance with applicable Ohio law rendering the mortgage invalid against the Trustee pursuant to provisions of 11 U.S.C. § 544.[2] As such, the

---

1. Default judgments were entered in favor of the Trustee against Defendants Anthony and Cassandra Salamone and Mastercard. The Defendant Cuyahoga County Treasurer's Answer asserted its lien interest for the relative priority it was entitled to receive.

2. 11 U.S.C. § 544(a) provides: (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

 (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

 (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

 (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

Trustee contends that the mortgage should be avoided and preserved for the benefit of the Debtors' bankruptcy estate. Ford admitted that the Debtors executed a mortgage in its favor on November 13, 1997, but generally denied all other relevant Complaint allegations. It specifically denied that the mortgage was not witnessed and executed properly under Ohio law or invalid as to the Trustee under § 544 of the Bankruptcy Code.

The parties have stipulated to the following:

1. The matters alleged in the Trustee's Complaint are within the core matter jurisdiction of this Court, and the parties consent to the entry of all final orders by the Bankruptcy Court.

2. Immediately prior to the commencement of the within bankruptcy case, the Debtors were the owners of the real estate described in the Plaintiff's Complaint, and known for street-numbering purposes as 12413 Garland Avenue, Garfield Heights, Ohio 44125.

3. On November 7, 1997, the Debtors granted to Ford Consumer Finance Company, Inc., a mortgage on the Real Estate (the "Mortgage").

4. The Debtors signed the Mortgage at the offices of Fidelity Mortgage in Independence, Ohio.

5. The Mortgage was filed for record on November 13, 1997, in Volume 97–11733, Page 21 of the Records of Cuyahoga County, Ohio.

6. Associates Home Equity Services ("Associates") is the successor in interest of Ford Consumer Finance Company, Inc., by merger.

7. On January 13, 1998, the Debtors filed their petition in the Bankruptcy Court seeking relief under Chapter 7 of Title 11 of the United States Code, and an order for relief was thereafter entered.

8. As of February 24, 1999, the balance due from the Debtors to Associates is $80,697.19.

9. The Cuyahoga County Treasurer has an interest in the Real Estate, said interest being for real property taxes and assessments, if any, accrued real property taxes and assessments, if any, and statutory penalties and interest thereon, if any, all of which taxes constitute a first and best lien against the Real Estate, the exact amount being unascertainable at the present time, but which amount will be determined at the time of sale of the Real Estate.

10. The parties agree that [certain] of the exhibits are authenticate copies of the original documents, but the parties dispute whether the documents were executed properly.

 Where a party challenges the validity of a mortgage and seeks to avoid a mortgage lien, as herein, the burden of proof is upon the complainant. That burden must be satisfied by a clear and convincing evidence standard. *Ford v. Osborne*, 45 Ohio St. 1, 12 N.E. 526, 527 (1887); *Paramount Finance Co. v. Berk*, 179 N.E.2d 788 (Ohio App.1962). Various evaluative criteria must also be considered, in addition to the credibility of the witnesses. Such includes: (1) The relative timing of the document's execution and the bankruptcy petition filing; (2) the location of the closing transaction; (3) the type and number of individuals present at the closing; (4) whether corroborating testimony was available to support that of the mortgagor debtor; (5) whether the document facially complies with applicable state law; (6) whether there exists a company practice/policy regarding closing transactions that was followed; (7) whether the notarial acts, under Ohio law, were properly applied.

In support of his assertion that the mortgage was improperly witnessed and executed, the Trustee examined Cassandra Salamone whose testimony was generally credible. She testified that she, her husband, and ten-month old son went to the office of First Fidelity Services, Inc. (Fidelity) during the afternoon of November 7, 1997 to close a refinancing on their personal residence. Upon entering Fidelity's conference room, she and her husband and child were accompanied by a Fidelity employee, (Mike McCandless), and an unnamed title agent. McCandless left the room prior to the commencement of any

signings and only returned during the signings with another unnamed individual, momentarily, to retrieve a chair from the conference room. Neither approached the signing table, and they both left promptly after retrieving the chair.

She and her family sat at the head of the conference table, while the title agent sat to her right. The closing took between thirty to forty-five minutes. She and her husband (Anthony) signed the mortgage and note on November 7, 1997 in Fidelity's conference room. She maintains that no one entered the conference room during the closing to sign any papers other than the unnamed title agent who remained throughout the closing and processed the papers which required their signatures. That individual was introduced to them, but she could not recall his name at trial. (C. Salamone, Direct and Cross–Exam.). She was unaware of a mortgage defect at the time of bankruptcy filing.

The testimony offered by the Trustee of Anthony J. Salamone was also credible. He had very little to do with arranging the mortgage refinancing, as his wife generally took care of the matter. He signed each document at the closing that required his signature. His testimony was consistent with that of his wife's regarding Fidelity's conference room layout and where they were seated relative to the closing agent. He also testified that the agent was the only other person in the conference room with he and his family during the closing transaction. The only exception occurred when McCandless and another unknown individual entered briefly to retrieve a chair and departed promptly. Neither Debtor could recall the name of the closing agent who assisted them during the closing but believed he appeared younger than themselves. Mr. Salamone believed that the agent had short red curlish hair and wore glasses. (A. Salamone, Direct and Cross–Exam.). Although he and his wife signed the mortgage, he was unable to identify the other signatures on the mortgage. He further testified that he saw no one else sign the various closing documents, including the mortgage, other than his wife. He first learned of the alleged mortgage defect after filing bankruptcy. He recalled the closing

took between one-half hour to an hour and ten minutes. Although he was holding his ten-month old son throughout the closing, he was attentive to the papers he was required to sign. (Id.).

During its case-in-chief, Ford called Harold C. Toft, the president of First Service Title Company, (First Service) to offer testimony. His testimony was generally credible. He was not present at the subject closing, but he is the custodian of his company's records. The thrust of his testimony was to address his company's policy regarding the attestation and execution of documents. He was familiar with First Service's Closing Department Operations Manual (Closing Manual) which was prepared by a consultant and himself (Ex. HH). It was in effect as of the subject closing transaction. On various occasions he would apprise his closing agents of the Company's closing policy which, *inter alia*, included the necessity for two witnesses, and where two witnesses were not present, the policy is to have the closing agent walk away from the closing. This policy was a verbal policy which he acknowledged was not contained in the Closing Manual. (H.C. Toft, Direct). Significantly, he testified on cross-examination that it was doubtful if the Closing Manual covered all of the rules and regulations pertaining to a closing transaction but further testified that it did contain some of the more important ones. (Id.). Upon reviewing the Closing Manual (Ex. HH), he conceded that it did not contain a specific requirement of two witnesses at a closing (See, Ex. HH–9). Indeed, he conceded that no part of the Closing Manual addressed a two-witness requirement, but the Manual should reflect the requirements of Ohio law. The Closing Manual was issued in 1997, prior to the Debtors' closing and is used by his five (5) full-time closing agents.

Gerald J. Finan testified on behalf of Ford. His testimony was credible. He currently serves as the office manager at First Service and is a former closing officer and closing supervisor at First Service and has been with the Company since 1996. Although he does not recall the Debtors' closing transaction, he recognized the mortgage (Ex. A) and testi-

fied that he signed and notarized it. (Finan, Direct). Although he testified that the Closing Manual requires two witnesses for the execution of closing documents, he was unable to support that assertion upon reviewing the Closing Manual (Ex. HH). The average closing takes between thirty to forty minutes. His signature appears on both the note and mortgage (Ex. B), and he typically signs it at the closing. (Finan, Direct). Upon cross-examination, Finan reiterated that he did not recall the subject closing, as he conducts three or four closings daily and has conducted approximately 200 closings since November of 1997. He conceded that the Closing Manual (Ex. HH–9) provides no instructions regarding the number of witnesses required, although there exists a provision pertaining to witnesses. Other than the Closing Manual exhibited, First Service has no other manuals pertaining to closing procedures. (Finan, Response to Court Inquiry).

Lastly, Defendant Ford called Christopher R. Reynolds for testimony. Reynolds is an employee of First Service and serves as its closing manager. In November of 1997, he was a closing agent and a notary. Like Finan, he has no specific recollection of the Debtors' closing transaction, but acknowledged that his signature appears on the Mortgage (Ex. A–3) as a witness but not as the notary. He also acknowledged his signature appearing on the attendant Note (Ex. B), the Truth–in–Lending Statement (Ex. C), and the Itemization of Amount Financed Statement (Ex. D). He signed each of the documents after the Debtors had signed, but he does not specifically recall this particular closing. He described his hair color as "blondish red".

Although he believed there existed a "two witness" requirement in the Closing Manual, upon examination of it, he testified no such reference is contained in the Manual. His practice and training is to leave the closing where two witnesses are not present.

On cross-examination, he testified that he recalled none of the Salamone closing or what they looked like. In 1997, he was closing approximately twenty transactions per week and has closed at least one thousand since November of 1997.

*Ohio Law*

Ohio Revised Code Section 5301.01 provides that;

> A deed, mortgage, land contract as referred to in division (B)(2) of section 317.08 of the Revised Code, or lease of any interest in real property and a memorandum of trust as described in division (A) of section 5301.255 of the Revised Code shall be signed by the grantor, mortgagor, vendor, or lessor in the case of a deed, mortgage, land contract, or lease or shall be signed by the settlor and trustee in the case of a memorandum of trust. The signing shall be acknowledged by the grantor, mortgagor, vendor, or lessor, or by the settlor and trustee, *in the presence of two witnesses, who shall attest the signing and subscribe their names to the attestation.* The signing shall be acknowledged by the grantor, mortgagor, vendor, or lessor, or by the settlor and trustee, before a judge or clerk of a court of record in this state, or a county auditor, county engineer, notary public, or mayor, who shall certify the acknowledgment and subscribe his name to the certificate of the acknowledgment.

ORC § 5301.01. (Emphasis added). The dispositive issue is not a novel one.[3] The court in *Citizens Nat. Bank in Zanesville v. Denison,* 165 Ohio St. 89, 133 N.E.2d 329 (1956) held that an improperly executed mortgage is not entitled to be recorded and is not constructive notice as to subsequent mortgagees. Further, the court in *In re Hofacker,* 34 B.R. 604 (Bankr.S.D.Ohio) noted that "Ohio Courts have consistently held that a mortgage which is attested by only one witness is invalid". *See Wright v. Franklin Bank,* 59 Ohio St. 80, 51 N.E. 876 (1898); *Amick v. Woodworth,* 58 Ohio St. 86, 50 N.E. 437 (1898).

In *Coshocton National Bank v. Hagans,* 40 Ohio App. 190, 178 N.E. 330 (1931), the court addressed a dispute as to the validity of a mortgage. Finding that the mortgage on its face was apparently duly executed and

**3.** *See, Simpson v. Zaptocky (In re Zaptocky),* 231 B.R. 260 (Bankr.N.D.Ohio 1998); *Simon v. First Union Mortgage Corp. (In re Burnham),* 231 B.R. 270 (Bankr.N.D.Ohio 1999).

recorded, the court concluded that "[the mortgage] carries with it a presumption of validity, and in order to destroy its effect as a mortgage, it must be shown to be defective by the contesters, and by a preponderance of the evidence."

The *Coshocton* court observed that:

The notary and witnesses testified that they had no independent knowledge or recollection of the incidents surrounding its signing and acknowledgment, but they all testified that they never affixed their signatures to any instrument as witnesses or as notary unless the parties were present and signed in their presence. This is all that could reasonable be expected under the circumstances, and a positive statement of an inflexible rule always adhered to by a notary or witness must carry great weight in the consideration of their evidence.

*Coshocton*, 178 N.E. at 330. The court in *In re Todd*, 70 B.R. 204, 207 (Bankr.N.D.Iowa 1986) found a mortgage to be the correct statement of the obligation secured. The court, in support of its findings of fact stated:

It is generally accepted law that a presumption exists in favor of the correctness and genuineness of writings and the presumption also favors the validity and regularity of the documents. 31A C.J.S. Evidence S 150 (1964).... Presumptions, however, are subject to being rebutted. Going into the trial the Debtors [are] faced with the presumption that the mortgage was correct as stated and it was their burden to rebut this presumption. The burden of overcoming a presumption must be cured by evidence stronger than a mere preponderance, clear and convincing evidence is necessary. *See In re Givens' Estate*, 254 Iowa 1016, 119 N.W.2d 191, 194–95 (1963) .... Where testimonial evidence is equally balanced at trial, as it was in this case, the party against whom the presumptions fall has not met its burden and cannot recover. 30 Am.Jur.2d Evidence S 1165 (1967).

*In re Todd*, 70 B.R. at 207; *See, Rowray v. Casper Mut. Building and Loan Ass'n*, 48 Wyo. 290, 45 P.2d 7 (1935); *See also, In re Adkins*, 28 B.R. 554, 558 (Bankr.N.D.Miss.

1983) (recognized presumption of regularity of an acknowledgment).

The court in *Paramount Finance Co. v. Berk*, 179 N.E.2d 788 (Ohio App.1962) addressed a similar challenge to the acknowledgment and attestation of a facially valid mortgage. Therein, the party challenging the validity of the mortgage claimed that the mortgagor did not acknowledge the instrument before a notary public and that the instrument was not signed in the presence of two witnesses. Construing Ohio law, the court held that testimony by mortgagors, as a matter of law, cannot overcome a certificate of acknowledgment. The Court further held that "since the evidence relating to acknowledgment is confined to the testimony of the mortgagors in the case, it is not sufficient to support a finding contrary to the certificate of acknowledgment *and the affirmative testimony of the notary* himself." *(Emphasis added)*. Because a facially valid acknowledgment cannot be controverted solely by the testimony of a mortgagor, the "affirmative testimony" referred to by the *Paramount* court necessarily refers to testimony by the notary regarding the proper attestation of the disputed mortgage. In the present proceeding, the Trustee failed to demonstrate that the subject mortgage was invalid even by the lesser preponderance of the evidence standard.

▇▇▇ The subject mortgage is, facially, a validly executed mortgage under applicable Ohio law (O.R.C. § 5301.01). Thusly, it is to be accorded a presumption of validity, unless overcome by persuasive evidence to the contrary. Herein, the Trustee has not overcome the presumption of validity by clear and convincing evidence. The mortgage contains the signatures of all parties to the transaction, signatures of two witnesses, and an acknowledgment and signature of a notary public. Additionally, there is no dispute regarding other required notarial acts relative to this matter. Collectively, these findings create a validly executed mortgage under Ohio law. Essentially, the testimony adduced places the mortgagors' (Debtors') word against that of the notary and the attesting witnesses. The testimony was equally balanced. No corroborating testimony was offered by the Trustee

to support the Debtors' testimony. Consequently, the Trustee is faced with a most difficult hurdle to overcome in mounting a successful challenge to the mortgage's validity. *See, Todd,* at 207 (Where testimony is equally balanced at trial, the party against whom the presumptions fall has not met its burden and cannot recover.). *See also, Paramount Finance, supra,* at 788. (Where the evidence relating to acknowledgment is confined to the testimony of the mortgagors in the case, it is not sufficient to support a finding contrary to the certificate of acknowledgment and the affirmative testimony of the notary himself.). Although the notary nor the other attesting witness had a present recollection of this transaction, they testified unequivocally that their signatures appeared on the mortgage and that their signings thereon complied with company policy whether verbal or written.

Under Ohio law, the person taking an acknowledgment (the notary) certifies that the person acknowledging appeared before him and acknowledged he executed the instrument. The notary further certifies that the person acknowledging was known to the person taking the acknowledgment, or that the person taking the acknowledgment had satisfactory evidence that the person acknowledging was the person described in and who executed the instrument. O.R.C. § 147.53. Thusly, construing 11 U.S.C. § 544(a), the Trustee has not shown, as of the bankruptcy petition filing date, that there exists interests subordinate under state law to the claim of a judicial lien creditor or a contract creditor. Nor has the Trustee shown that there exists an obligation of the Debtors which is voidable under state law by a lien creditor or purchaser.

 Alternatively, the Trustee seeks avoidance relief pursuant to provisions of 11 U.S.C. § 547(b). This Code section addresses avoidable preferential transfers. Therein, a prepetition transfer is voidable where certain elements are sufficiently demonstrated under subsection (b) and where no § 547(c) exceptions apply to the transfer in question. In preferential avoidance actions, the burden of proof is upon the complainant who must prove avoidance by a preponderance of the evidence. *In re Fox,* 229 B.R. 160 (Bankr. N.D.Ohio 1998); 11 U.S.C. § 547(g). It is undisputed that the Debtors gave a mortgage lien in favor of Ford within the two-month period prior to filing their bankruptcy petition. (See Stipulation Nos. 2 and 3, *supra).* No evidence was adduced, however, to show a satisfaction of all required elements under § 547(b). For example, no evidence was presented to establish that the interest transferred constituted an interest of the Debtors in property for or on account of an antecedent debt owed by the Debtors before such transfer was made, *inter alia.* 11 U.S.C. § 547(b)(2). Under § 547(b), it is incumbent upon the Trustee to prove each conjunctive element, except for (b)(3) which provides a presumption of insolvency. Accordingly, the Trustee's prayer for relief under § 547(b) has not been established by the requisite burden of proof. See, *Lawson v. Ford Motor Co.,* 78 F.3d 30 (2d Cir.1996); *In re Erin Food Svcs.,* 980 F.2d 792, 799 (1st Cir.1992). (Elements of § 547 must be established by a preponderance of the evidence.). Significantly, even where the Trustee is able to establish each of the conjunctive elements of § 547(b) by a preponderance of the evidence, which has not occurred, herein, most courts impose a "diminution" requirement and hold that the trustee still must show a diminution of the value of the Debtors' estate which would be detrimental to other creditors for the transfer to be voidable. *In re Hartley,* 825 F.2d 1067 (6th Cir.1987). Herein, such was not shown.

*Conclusion*

Having determined that the Trustee failed to demonstrate the invalidity of the mortgage, avoidance under § 544(a) and under § 547(b) is not warranted and no recovery to benefit the Debtors' bankruptcy estate is available under § 550 and § 551 of the Code.

Accordingly, the Trustee's Complaint to avoid the subject mortgage is hereby dismissed. Each party is to bear its respective costs.

**IT IS SO ORDERED.**

### JUDGMENT

A Memorandum Of Opinion And Order having been rendered by the Court in these proceedings,

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that the Trustee's Complaint to avoid the subject mortgage is hereby dismissed. Each party is to bear its respective costs.