878 F.2d 1436
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Tyler SHERLUND, a Minor, by his Next Friends, Lyle and
Sharon Sherlund, Plaintiff-Appellant,
v.
LINCOLN NATIONAL LIFE INSURANCE CO., a Foreign Corporation,
Defendant-Appellee.
 No. 88-1585.
 United States Court of Appeals, Sixth Circuit.
 July 13, 1989.
 
 Before WELLFORD and ALAN E. NORRIS, Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 This is an appeal from a grant of summary judgment in favor of Lincoln National Life Insurance Company ("Lincoln"). The case involves the question of whether the issuer of a group insurance policy with a coordination of benefits provision must pay benefits as a primary carrier when the insured is also covered by a statutorily required no-fault automobile insurance policy, which, by the insured's election, does not have a coordination of benefits provision. Because under the facts of this case we conclude that the group plan was secondarily liable, we affirm the decision of the district court.
 
 I.
 
 2
 The facts relating to this appeal are not in dispute. Two-year-old Tyler Sherlund was seriously injured as the result of an automobile accident occurring on October 9, 1986. At that time, he was a beneficiary under two insurance policies issued to his parents. The first was a no-fault automobile insurance policy issued by Citizens Insurance Company of America ("Citizens"). At the Sherlunds' election, that policy did not contain a coordination of benefits clause making Citizens' coverage secondarily liable to any other policies.
 
 
 3
 The second was a group insurance policy issued by Lincoln as part of an employee welfare benefit plan to the Michigan Association of Homebuilders, by whom Tyler's father was employed. It provided broad coverage, including life, accident, and medical insurance, and contained a coordination of benefits clause:
 
 
 4
 Coordination of Benefits (COB) means that the benefits provided by This Policy will be coordinated with the benefits provided by any other Plans covering the insured individual for whom claim is made. The benefits payable under This Policy may be reduced, as stated under the rules set out below, so that an insured individual's total payment from all Plans will not exceed 100% of his or her total eligible expenses.
 
 
 5
 * * *
 
 
 6
 * * *
 
 
 7
 COB takes into consideration benefits from many sources (Plans), but COB does not consider benefits payable under individual policies. (However, Lincoln National does [coordinate benefits] with individual no-fault auto insurance policies, by whatever name called.)
 
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 Following is a list of the Plans which are considered for COB:
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 13. Individual no-fault auto insurance, by whatever name called.
 
 
 14
 * * *
 
 
 15
 * * *
 
 
 16
 A. Any Plan which does not have a COB or similar provision will pay its benefits first. (Emphasis supplied.)
 
 
 17
 Citizens reimbursed the Sherlunds for medical expenses arising out of the accident. However, when the Sherlunds also sought to have Lincoln reimburse them for those expenses under the group plan, Lincoln refused, relying upon the coordination of benefits clause.
 
 
 18
 Thereafter, Tyler's parents, as his representative, initiated this diversity action alleging that Lincoln was primarily liable for payment of the medical expenses. Both parties moved for summary judgment, and it is from the district court's determination in favor of Lincoln that the Sherlunds appeal.
 
 II.
 
 19
 Although the complaint grounded federal jurisdiction upon diversity of citizenship, this case actually presents a federal question. The parties do not dispute that the Lincoln group plan is a "welfare plan" subject to federal legislation under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Sec. 1001 et seq.[1] The Supreme Court has made clear that ERISA preempts state law causes of action that relate to welfare plans governed by it. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45 (1987); see also Daniel v. Eaton Corp., 839 F.2d 263, 266 (6th Cir.), cert. denied, 109 S.Ct. 76 (1988). A cause of action that relates to an ERISA plan is a federal question to be enforced exclusively through ERISA's civil and criminal enforcement provisions. Pilot Life, 481 U.S. at 52-57.
 
 
 20
 In Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58 (1987), the Court considered whether a complaint that alleged only a common law cause of action--such as the one presented here--would nevertheless be cognizable in a federal forum under federal question jurisdiction. The Court concluded that, because Congress had so pervasively preempted the ERISA area, a state based cause of action that falls within the scope of ERISA's civil enforcement provisions necessarily states a federal claim. Id. at 64-67. Thus, a state law cause of action that relates to an ERISA plan presents a federal question and invokes federal question jurisdiction. See, e.g., Kentucky Laborers Dist. Council Health & Welfare Fund v. Hope, 861 F.2d 1003 (6th Cir.1988). Under 29 U.S.C. Sec. 1132(a)(1)(B), "[a] civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce rights under the terms of the plan, or clarify his rights to future benefits under the terms of the plan." It is within that ERISA enforcement provision that the Sherlunds' claim for benefits under the Lincoln plan presents a federal question.
 
 III.
 
 21
 The central issue on appeal is the effect, if any, that Mich.Comp. Laws Sec. 500.3109a and its judicial gloss have upon resolution of this case. That section reads:
 
 
 22
 An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household.
 
 
 23
 The Michigan Supreme Court has determined that, as a result of Sec. 500.3109a, whenever a coordination of benefits clause in a no-fault policy conflicts with one in another policy, the no-fault policy will be secondarily liable. Federal Kemper Ins. Co. v. Health Ins. Admin., Inc., 424 Mich. 537, 383 N.W.2d 590 (1986).
 
 
 24
 The district court concluded that because there was no conflict between coordination of benefits clauses in the two policies, Michigan law was not implicated and federal common law required it to review Lincoln's denial of benefits under an arbitrary and capricious standard.[2] However, the issue raised by this appeal cannot be decided without reference to Michigan law.
 
 
 25
 The Rules of Decision Act, 28 U.S.C. Sec. 1652, provides that "[t]he laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in the civil actions in the courts of the United States, in cases where they apply." Indeed, unless Congress or the Constitution require otherwise, the Act mandates application of relevant state law even if the basis for jurisdiction is a federal question. C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure Sec. 4515 (1982); see also Morgan v. South Bend Community School Corp., 797 F.2d 471, 474-75 (7th Cir.1986).
 
 
 26
 Although Congress intended that, with certain exceptions, state law that relates to ERISA plans be preempted by federal law, 29 U.S.C. Sec. 1144(a); see also Whitworth Bros. Storage Co. v. Central States, Southeast and Southwest Areas Pension Fund, 794 F.2d 221, 234-35 (6th Cir.), cert. denied, 479 U.S. 1007 (1986) (Congress intended the courts to develop a body of federal common law relating to ERISA); In re White Farm Equip. Co., 788 F.2d 1186, 1191 (6th Cir.1986) ("ERISA mandates the application of federal rules of decision in cases involving employee welfare benefit plans."), this court has determined that Sec. 500.3109a, and the case law relating to it, have not been preempted by ERISA. Northern Group Serv., Inc. v. Auto Owners Ins. Co., 833 F.2d 85 (6th Cir.1987), cert. denied, 108 S.Ct. 1754 (1988). That is because the "savings clause," 29 U.S.C. Sec. 1144(b)(2)(A), of ERISA's expansive preemptory provision, exempts from preemption state laws that regulate insurance. Id. at 89-90. Non-preempted state law that regulates insurance includes decisional law "specifically directed" toward the insurance industry. Pilot Life, 481 U.S. at 48 n. 1, 50. Accordingly, we must determine whether Michigan insurance law entitles the Sherlunds to recover from Lincoln. We conclude that it does not.
 
 
 27
 The Sherlunds argue that Federal Kemper supports their claim under the Lincoln policy. That case was decided in the context of two conflicting coordination of benefits clauses, one of which was contained in a no-fault automobile insurance plan. To further the Michigan legislature's perceived purpose of providing an option to purchase coordinated no-fault insurance at a reduced premium--and thereby eliminate duplicative recovery and reduce insurance costs--the court determined that, when there are two conflicting coordination of benefits clauses, the one in a no-fault plan would prevail and make the plan secondarily liable. Federal Kemper, 383 N.W.2d at 594-96. That the court specifically intended to limit its rule of secondary liability for no-fault plans to situations where there is a conflict, is explained in a footnote which reads:
 
 
 28
 Our decision today is made in the factual context in which the no-fault insured chose coordinated coverage and the no-fault insurer, accordingly, charged a lower premium rate. We express no view as to what the result would be when the insured does not so elect and the no-fault premium is not correspondingly reduced. We note, however, that at oral argument, plaintiff's counsel admitted that in that situation the no-fault insurer would not be secondary, nor entitled to reimbursement from the health insurer.
 
 
 29
 Id. at 596 n. 10; see also Auto-Owners Ins. Co. v. Farm Bureau Mut. Ins. Co., 171 Mich.App. 46, 429 N.W.2d 637, 639 (1988) (Federal Kemper "noted that in the absence of a coordination-of-benefits clause in the no-fault policy the health insurer would be allowed to coordinate its coverage with no-fault benefits."); West Michigan Health Care Network v. Transamerica Ins. Corp., 167 Mich.App. 218, 421 N.W.2d 638, 643 (1988) ("insureds who select noncoordinated no-fault insurance will receive primary medical benefits from their no-fault insurer").
 
 
 30
 The Sherlunds argue that a conflict between the two policies exists, per se, because one policy has a coordination of benefits clause and the other does not. That argument is legally incorrect. As the Federal Kemper court noted, conflicts arise "when two or more insurance policies covering the same risk contain [coordination of benefits] provisions." 383 N.W.2d at 592 (emphasis supplied). In this situation, there is no conflict between coordination of benefits clauses in the policies, and Federal Kemper does not require the Lincoln plan to compensate the Sherlunds.
 
 
 31
 The Sherlunds also suggest that the Michigan legislature, through Sec. 500.3109a, intended that no-fault plans would always be secondarily liable, regardless of whether an insured had elected to coordinate benefits under it. They argue that, if an ERISA plan may coordinate benefits and make a no-fault plan primarily liable, then an insured has lost his option to coordinate his no-fault plan as contemplated by the statute. A similar argument was made and rejected in Estabrook v. Lincoln Nat'l Life Ins. Co., 172 Mich.App. 450, 432 N.W.2d 733 (1988).
 
 
 32
 In Estabrook, a motorist was injured in a two-vehicle accident and sued to recover medical expense benefits under a group disability policy purchased by his employer from Lincoln National Life Insurance Company. The driver of the other vehicle was covered by a no-fault automobile insurance policy, which had paid the plaintiff medical benefits. In addition to that recovery, the plaintiff applied to Lincoln for payment of benefits. Lincoln rejected that claim based upon the policy's coordination of benefits clause. The trial judge concluded that the plaintiff was not entitled to medical benefits under the Lincoln group policy in light of the coordination of benefits provision. On appeal, the plaintiff argued that the coordination of benefits provision in the Lincoln group plan was invalid under the Michigan Coordination of Benefits Act because the Act prohibited Lincoln from coordinating its policy with a nongroup, no-fault policy.
 
 
 33
 The Michigan Court of Appeals rejected the plaintiff's argument because the state legislature expressly made the enactment of the Coordination of Benefits Act contingent upon passage of Mich.Comp. Laws Sec. 500.3610a, which provides in relevant part: "A group disability insurance policy may contain provisions for the coordination of benefits otherwise payable under the policy with benefits payable for the same loss under ... automobile medical payments insurance." Id. at 735.
 
 
 34
 The court stated that "it [is] clear that the Legislature intended Sec. 3610a to control the coordination of group disability policies with nongroup no-fault policies notwithstanding the more general provisions of the Coordination of Benefits Act." Id. Therefore, because section 3610a is an exception to the Coordination of Benefits Act's prohibition against coordination provisions in group disability policies, the group policy issued by defendant could properly coordinate with a nongroup, no-fault policy. Id. The Michigan court concluded that "[a] fair reading of this coordination of benefits clause leads inexorably to the conclusion that any no-fault benefits, by whatever name called and regardless of their source, payable to plaintiff, [are] subject to coordination of benefits payable under his coverage by defendant's policy." Id. at 736 (emphasis in original). We agree with that analysis.
 
 
 35
 "Michigan law requires nothing more of companies licensed to underwrite insurance within the state than that they offer reduced premium policies with coordination of benefits clauses to those insureds already covered by other health and accident coverage." Winstead v. Indiana Ins. Co., 855 F.2d 430, 433 (7th Cir.1988) (emphasis in original), cert. denied, 109 S.Ct. 839 (1989). The no-fault carrier in the instant matter did, in fact, offer coordinated benefits, but the Sherlunds rejected the offer. Their option to coordinate benefits remained; they only needed to exercise it. They received 100 percent payment for allowable expenses from Citizens, and it is not inequitable that they not receive 200 percent compensation under these circumstances. Accordingly, we conclude that non-preempted Michigan insurance law does not require that the Lincoln plan be primarily liable. Furthermore, there is nothing in the body of otherwise applicable federal common law that requires a different result. "An excess insurance clause is valid and effective where one policy contains such provision with respect to 'other insurance' and the other policy does not provide in any way for other insurance." 8A Appleman, Insurance Law and Practice Sec. 4909.25 (1981).
 
 
 36
 We find no merit to the Sherlunds' final contention that Lincoln's failure to file its coordination of benefits provision as required by Mich.Comp. Laws Sec. 500.2236 somehow affects the outcome of this case. Assuming arguendo that it did fail to file, the effect would be to render any provision contrary to Michigan law nugatory and supplanted by the provisions of the Michigan Insurance Code. Mich.Comp. Laws Sec. 500.3468(2); Bill v. Northwestern Nat'l Life Ins. Co., 143 Mich.App. 766, 373 N.W.2d 214 (1985), app. denied, 425 Mich. 877, 389 N.W.2d 863 (1986). As we have already concluded, the Lincoln coordination of benefits clause does not conflict with Michigan law and is therefore valid despite the possibility that Lincoln may have failed to properly file it.
 
 IV.
 
 37
 For the foregoing reasons, the order of the district court granting summary judgment in favor of Lincoln is affirmed.
 
 
 
 [1]
 The term "welfare plan" is defined in Sec. 3(1) of ERISA as
 any plan, fund, or program which heretofore or is hereafter established or maintained by an employer ... to the extent such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment.
 29 U.S.C. Sec. 1002(1).
 
 
 [2]
 This court has stated that "the appropriate determination in reviewing the decision of [an ERISA] plan administrator with respect to a claim for benefits is whether the decision was arbitrary, capricious, made in bad faith or otherwise contrary to law." Daniel, 839 F.2d at 267 (citations omitted). Subsequently, the Supreme Court decided Firestone Tire & Rubber Co. v. Bruch, --- U.S. ----, 109 S.Ct. 948, 103 L.Ed.2d 80 (1988), where it determined that, when the trustee of an ERISA plan is not vested with discretion, his actions taken in relation to the plan will be reviewed upon a de novo basis