the presumption that the mortgage was properly executed.[4] Therefore, because it is clear that an Ohio court would have held that the presumption of validity of this mortgage had not been overcome by clear and convincing evidence, I would hold that the bankruptcy court's finding of fact to the contrary is clearly erroneous.

Section 544(a) vests the Trustee with certain strong-arm powers to avoid transfers that would be voidable by a judicial lien creditor, unsatisfied execution creditor or bona fide purchaser of real property, as those are defined under applicable state law. *See Bash v. Check (In re Check)*, 129 B.R. 492, 494 (Bankr. N.D. Ohio 1991). Whether the Trustee can be treated as either a judicial lien creditor or a bona fide purchaser of real estate for the purpose of exercising strong arm power under section 544(a) is determined under applicable state law as of the time the bankruptcy is commenced. *See Owens-Ames-Kimball Co. v. Michigan Lithographing Co. (In re Michigan Lithographing Co.)*, 997 F.2d 1158, 1159 (6th Cir. 1993).

Because Chase's mortgage was properly recorded before the Zaptockys filed their bankruptcy petition, the Trustee cannot, under Ohio law, stand in the shoes of a bona fide purchaser without notice. *See City of Toledo v. Brown*, 200 N.E. 750, 753 (Ohio 1936). Nor can Chase's valid lien be avoided by the Trustee standing in the shoes of a hypothetical judicial lien creditor. *See Bank of Cleveland v. Sturges*, 2 F. Cas. 626, 627 (D. Ohio 1840). Therefore, I would hold that the bankruptcy court erred as a matter of law when it allowed the Trustee to avoid Chase's mortgage in the Zaptocky's property. Accordingly, I would reverse the order of the bankruptcy court.

---

[4] Notably, this same bankruptcy court correctly applied Ohio law on this issue in at least two subsequent cases. *See In re Burnham*, 231 B.R. at 275; *In re Salamone*, 231 B.R. at 633-34.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0167P (6th Cir.)
File Name: 01a0167p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

In re: BERNARD L. ZAPTOCKY and GLORIA J. ZAPTOCKY,
            *Debtors.*

No. 99-3618

---

DAVID O. SIMON, Chapter 7 Trustee,
            *Plaintiff-Appellee,*

*v.*

CHASE MANHATTAN BANK,
            *Defendant-Appellant.*

---

Appeal from the Bankruptcy Appellate Panel of the Sixth Circuit.
No. 98-13062—Randolph Baxter, Bankruptcy Judge.

Argued: March 16, 2000

Decided and Filed: May 22, 2001

Before: JONES, BATCHELDER, and CLAY, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:**     Amelia  A.  Bower,  McFADDEN  &
ASSOCIATES, Cleveland, Ohio, for Appellant. Stephen D.
Hobt, Cleveland, Ohio, for Appellee. **ON BRIEF:** Amelia
A. Bower, McFADDEN & ASSOCIATES, Cleveland, Ohio,
for  Appellant.    Stephen  D.  Hobt,  Cleveland,  Ohio,  for
Appellee.

JONES, J., delivered the opinion of the court in which
CLAY, J., joined.  BATCHELDER, J. (pp. 14-20), delivered
a separate dissenting opinion.

———————————

**OPINION**

———————————

NATHANIEL R. JONES, Circuit Judge. Plaintiff-Appellee
David  O.  Simon  is  the  trustee  of   Bernard  and  Gloria
Zaptocky's  bankruptcy  estate.    During  the  course  of  the
Zaptocky bankruptcy proceedings, Simon filed an action to
set aside a mortgage that the Zaptockys granted to Defendant-
Appellant Chase Manhattan Bank ("Chase"). Simon asserted
that  the  Bankruptcy  Code's  strong  arm  clause  allows  the
estate  to  avoid  the  mortgage  because  it  was  not  properly
executed under Ohio law.  The bankruptcy court ordered
judgement for Simon. The Bankruptcy Appellate Panel of the
Sixth  Circuit  ("BAP")  affirmed  the  bankruptcy  court's
decision.  Chase now appeals the BAP's  decision to this
Court.  For the reasons stated below, we **AFFIRM** the BAP's
decision.

**I.  Facts**

In February of 1997, the Zaptockys refinanced their home
with Chase.  The second mortgage was executed on February
7th in the Zaptocky's home, and Gary Williams of First
Service Title Agency served as the "closer."  The mortgage

In  evaluating  the  validity  of  the  Zaptocky's  mortgage,
neither the bankruptcy court nor the BAP considered that
Ohio law accords great weight to a notary public's testimony
and discounts a mortgagor's testimony with regard to the
circumstances  surrounding  the  execution  of  a  mortgage.
Instead,  the  bankruptcy  court  discounted  *the  notary's*
testimony that he always followed company policy—rather
than  crediting  it  with  the  "great  weight"  required  by
*Coshocton National Bank*—and credited the testimony of the
mortgagors, the only competing evidence before the court,
which,  under  *Paramount*  and  its  progeny,  is  insufficient  as  a
matter  of  law  to  overcome  the  testimony  of  the  notary.
*Helbling v. Krueger*—the opinion heavily relied upon by the
majority—makes the same mistake.  And it is distinguishable
on its facts.

In  *Krueger*,  the  key  factor  in  discrediting  the  notary's
testimony was that the other witness was, like the notary, a
closer  for  the  mortgage  company.    The  bankruptcy  judge
found incredible the notion that one closer would have been
called away from his own busy schedule to go to the home of
customers of another closer in order to witness a mortgage he
was  not  closing.    *See Krueger*, 2000 WL 895601, at *2.
Those are not the facts here.  Consequently, even if I were to
agree that *Krueger* passes muster under the Rules of Decision
Act (and I do not), I think it inapplicable to this case, which
presents very different facts.

As  a  matter  of  Ohio  law,  in  the  face  of  Mr.  Williams's
testimony that he would not, under any circumstances, close
a loan without the proper number of witnesses being present,
the debtors' testimony is simply not sufficient to overcome

———————————

acknowledgment on the recorded mortgage does not
render  the  mortgage  ineffective  for  purposes  of
constructive notice.

the Ohio Supreme Court in *Potter* for the strength of this presumption:

> This principle rests upon the soundest reason and upon undisputed authority, and if not adhered to by the courts, or, when plainly disregarded, is not enforced by reviewing courts, the security and safety reposed in deliberately written instruments will be frittered away, and they will be left to all the uncertainty incident to the imperfect and 'slippery memory' of witnesses.

*Potter*, 27 Ohio St. at 85.

The newly enacted Ohio Rev. Code § 5301.234 does not apply to the Zaptocky's mortgage because that mortgage was executed in February of 1997. But the Ohio Legislature's action is instructive—Ohio law, which previously disfavored such challenges, now expressly provides that, absent a showing of fraud, the presumption of validity of a recorded mortgage may not be overcome by evidence of defective execution of that mortgage.[3]

---

[3]Ohio Rev. Code § 5301.234 provides:

(A) Any recorded mortgage is irrebuttably presumed to be properly executed, regardless of any actual or alleged defect in the witnessing or acknowledgment on the mortgage, unless one of the following applies:
   (1) The mortgagor, under oath, denies signing the mortgage.
   (2) The mortgagor is not available, but there is other sworn evidence of a fraud upon the mortgagor.
(B) Evidence of an actual or alleged defect in the witnessing or acknowledgment on the mortgage is not evidence of fraud upon the mortgagor and does not rebut the presumption that a recorded mortgage is properly executed.
(C) The recording of a mortgage is constructive notice of the mortgage to all persons, including without limitation, a subsequent bona fide purchaser or any other subsequent holder of an interest in the property. An actual or alleged defect in the witnessing or

bears the signatures of Bernard and Gloria Zaptocky as mortgagors, of Gary Williams as witness, and of "Taylor Lloyd" as witness.

On April 24, 1998, the Zaptockys filed for Chapter 7 bankruptcy. During those proceedings, the Bankruptcy Trustee, David O. Simon, filed an adversary proceeding against Chase. The Trustee asserted the "strong arm" power of 11 U.S.C. § 544(a) allows the estate to avoid the Chase mortgage because it was not validly executed under Ohio law. Specifically, Simon claimed that the mortgage documents did not comply with Ohio Revised Code § 5301.01, which requires that a mortgage be signed in the presence of two witnesses.

At trial, both Bernard and Gloria Zaptocky testified that they signed the mortgage at their dining room table in the presence of Gary Williams. They both insisted that Williams was the only witness present at the signing and that they did not know any person by the name of Taylor Lloyd. In response, Chase offered the testimony of Gary Williams. Williams testified that he had no specific recollection of the events of February 7, 1997 and that he did not know of any person by the name of "Taylor Lloyd." However, Williams also stated that the company with which he was employed at the time of the Zaptocky closing, First Service Title Agency, maintained a policy of not closing loans unless two witnesses were present. He claimed that he would not have signed and notarized the Zaptocky mortgage in contravention of that policy because such actions would have led to his dismissal.

After weighing the evidence, the bankruptcy court found that the Chase mortgage was not validly executed under Ohio law because there was only one witness present at the signing of the mortgage documents. *See Simon v. Chase Manhattan Bank (In re Zaptocky)*, 231 B.R. 260, 264 (Bankr. N.D. Ohio 1998). The court held that since the mortgage was not validly executed, Simon could avoid the mortgage under 11 U.S.C. § 544(a)(1), which allows bankruptcy trustees to avoid

transfers of property that could be avoided by a judicial lien creditor. *Id.* at 265. Chase appealed this decision to the BAP.

The BAP reviewed the bankruptcy court's legal determinations *de novo* and its factual determinations for clear error. It held that the trial court did not commit clear error when it found that only one witness was present at the signing of the Chase mortgage and that the mortgage was not validly executed under Ohio law. *See Simon v. Chase Manhattan Bank (In re Zaptocky)*, 232 B.R. 76, 81 (B.A.P. 6th Cir. 1999). The BAP also concluded that Simon could avoid the Zaptockys' mortgage under the bankruptcy code. Unlike the trial court, however, the BAP relied on Section 544 (a)(3) and reasoned that since a bona fide purchaser would have been able to avoid the improperly executed mortgage, the Trustee could also avoid Chase's claim. *Id*. at 83. The BAP also held that Chase did not have an equitable right of subrogation against the bankruptcy estate. *Id*. at 84. On May 13, 1999, Chase filed a timely notice of appeal to this Court. We review the bankruptcy court's legal holdings *de novo* and its factual determinations for clear error. *See Corzin v. Fordu (In re Fordu),* 201 F.3d 693, 696 n. 1 (6th Cir. 1999).

## II. Background

The "strong arm" clause of the Bankruptcy Code, 11 U.S.C. § 544(a), grants a bankruptcy trustee the power to avoid transfers of property that would be avoidable by certain hypothetical parties. Section 544(a) provides:

The Trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by –

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple

Furthermore, the Ohio Legislature has enacted legislation that takes Ohio law one step further. A recent bankruptcy court opinion explains:

In the last few years chapter 7 trustees in this district have elicited testimony from several debtors at their 341 creditors' meeting that only one of the two named attesting witnesses was actually present when the mortgage on their property was signed. This has resulted in the threat that a substantial number of mortgages, whose validity and enforceability are otherwise unquestioned, could be avoided by trustees in bankruptcy. In response to that threat, the Ohio legislature enacted Ohio Rev. Code § 5301.234 which, in general, would preclude impeachment of the attestation and acknowledgment of a facially valid mortgage except in cases of actual fraud and would make the recording of a facially valid mortgage constructive notice to all persons, including specifically bona fide purchasers, thus cutting off the trustee's attack under section 544(e) of the Bankruptcy Code. However, Ohio Rev. Code § 5301.234 became effective June 30, 1999, . . . [and] every opinion in which this section has been considered has denied it retroactive application.

*In re Jeannette Williams*, 240 B.R. at 885-86. Although the *Williams* court held that the Ohio statute did not apply to that case, the court determined—on facts very similar to those in this case—that the Trustee did not meet her burden of proof necessary to overcome the presumption of validity of the mortgage, explaining that "the point where evidence on this issue becomes clear and convincing is much closer to the point where it dispels reasonable doubt than where it satisfies the preponderance test." *Id*. at 889. Quoting the venerable Ohio case of *Potter v. Potter*, 27 Ohio St. 84, 85 (1875), the court said, "[T]he presumption is so strongly in favor of the instrument that . . . nothing short of a clear and convincing state of fact . . . will warrant the court to interfere." *Williams*, 240 B.R. at 890. I think it is worth noting the reason given by

mortgage appeared to have been properly executed and recorded. The appellate court held, "It [the mortgage] therefore carries with it a presumption of validity, and in order to destroy its effect as a mortgage it must be shown to be defective by the contesters, and by a preponderance of the evidence." *Coshocton Nat'l Bank v. Hagans*, 178 N.E. 330, 330 (Ohio Ct. App. 1931). As in the case now before us, the notary and witnesses in *Coshocton National Bank* testified that they had no independent knowledge or recollection of the signing but that they never signed any instrument as witnesses or as notary unless the parties were present and signed the instrument in their presence. The court held, "This is all that could reasonably be expected under the circumstances, and a positive statement of an inflexible rule always adhered to by a notary or witness *must carry great weight* in the consideration of their evidence." *Id.* (Emphasis added).

More recently, another Ohio court of appeals reiterated the Ohio Supreme Court's rule that the presumption of validity flowing from a deed that appears on its face to have been executed in due form may be overcome only by clear and convincing evidence, and that the burden of proof is on the party challenging the validity of the deed's execution. *See Weaver v. Crommes*, 167 N.E. 2d 661 (Ohio Ct. App. 1959). Other recent Ohio decisions have held explicitly that, in contrast to the great weight that must be accorded to the testimony of the notary, the testimony of the mortgagors "is insufficient in law to overcome the certificate of acknowledgment by the notary." *Paramount Fin. Co. v. Berk*, 179 N.E.2d 788, 788 (Ohio Ct. App. 1962). *See Society Nat'l Bank v. Andrasic*, No. 12447, 1986 WL 398, at *2 (Ohio Ct. App. Nov. 5, 1986) (following *Paramount*).[2]

contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a) (1993).

As trustee, David Simon is entitled to avoid the Zaptockys' mortgage under section 544(a)(3) if a hypothetical bona fide purchaser would be able to avoid this mortgage. Since this mortgage concerns real property located in Ohio, this inquiry is governed by Ohio law. *See Watson v. Kenlick Coal Co., Inc.*, 498 F.2d 1183, 1190 (6th Cir. 1974).

In Ohio, there are three major prerequisites for the proper execution of a mortgage: (1) the mortgagor must sign the mortgage deed; (2) the mortgager's signature must be attested by two witnesses; and (3) the mortgagor's signature must be acknowledged or certified by a notary public (or other designated official). *See* OHIO REV. CODE ANN. § 5301.01 (Anderson1999). If any one of these prerequisites is not met, the mortgage is not validly executed and it may be avoided by a subsequent bona fide purchaser who does not have actual or constructive knowledge of the prior mortgage.[1]

---

[2] *See also Simon v. First Union Mortgage Corp.* (*In re Burnham*), 231 B.R. 270, 274 (Bankr. N.D. Ohio 1999) (same); *Baumgart v. Ford Consumer Fin.* (*In re Salamone*), 231 B.R. 628, 633 (Bankr. N.D. Ohio 1999) (same).

[1] Section 5301.25(A) of the Ohio Revised Code states that "[a]ll deeds, land contracts . . . and instruments of writing properly executed for the conveyance or encumbrance of lands . . . shall be recorded in the office of the county recorder of the county in which the premises are

### III. Was the Mortgage Properly Executed Under Ohio Law?

In this case, the only prerequisite at issue is whether the mortgagors' signatures were properly attested to by two witnesses. As noted above, the mortgage bears the names of two witnesses, Gary Williams, who also served as closer, and "Taylor Lloyd." At trial, the Zaptockys both testified that no person by the name of Taylor Lloyd was present in their house when they signed the mortgage. In contrast, Gary Williams asserted that although he did not remember closing the Zaptocky's mortgage and did not know anyone by the name of Taylor Lloyd, this person must have been present because he always adhered to First Service's policy, which forbid its employees from closing loans unless two witnesses were present. Upon reviewing this evidence, the bankruptcy court concluded that Mr. Williams was the only witness present at the signing of the Chase mortgage and that the mortgage was not properly executed. *In re Zaptocky*, 231 B.R. at 264. The BAP held that although a facially valid mortgage is presumed to have been properly executed, the bankruptcy court's holding was not clearly erroneous. *In re Zaptocky*, 232 B.R. at 81.

On appeal, Chase argues that the bankruptcy court and the BAP erred because they did not apply the correct legal standard when they determined that Gary Williams was the only witness present at the signing of the Zaptocky mortgage. Chase points out that under Ohio law a facially valid mortgage bears a presumption of validity and that those who contest such a mortgage must prove the instrument is defective by clear and convincing evidence. *See Coshocton Nat'l Bank v. Hagans*, 178 N.E. 330 (Ohio App. 1931) (a

---

situated, and until so recorded or filed for record, they are fraudulent, so far as relates to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of such former deed or land contract or instrument." OHIO REV. CODE ANN. § 5301.25(A) (Anderson 1999).

U.S.C. § 1652 (Rules of Decision Act).[1] But the majority does not.

Rather than adhere to what Ohio's state courts have said about Ohio law, the majority follows *Helbling v. Krueger* (*In re Krueger*), No. 98-18686, Adv. No. 99-1016, 2000 WL 895601 (Bankr. N.D. Ohio Jun. 30, 2000). In so doing, I believe the majority runs afoul of the Rules of Decision Act because the Act applies not only to a state's substantive law, but to the state courts' construction of that law. *See Doggrell v. Great Southern Box Co., Inc., of Miss.*, 206 F.2d 671, 674 (6th Cir. 1953). Hence, we cannot dispense with what Ohio courts have said about Ohio law simply because we might prefer the analysis and result offered by a federal bankruptcy judge's view of Ohio law.

At issue in this case is how an Ohio court would resolve the inconsistency between the testimony of the debtors and the title company representative with regard to the execution of the mortgage. Ohio law is clear on this question and has been clear for a long time. In 1887, the Ohio Supreme Court held that "where a party, who has in fact signed a deed that purports to be acknowledged in due form of law, claims that the certificate is false, the security of title and the repose of society require that he should establish the fact by clear and convincing proof. A mere preponderance is not sufficient." *Ford v. Osborne*, 12 N.E. 526, 527 (Ohio 1887). Nearly half a century later, an Ohio court of appeals addressed a case in which the mortgagors sought to invalidate a $2,500 mortgage they had granted the Coshocton Bank. On its face, the

---

[1] *See also Sherlund v. Lincoln Nat'l Life Ins. Co.*, No. 88-1585, 1989 WL 76159, at *3 (6th Cir. July 13, 1989) ("Indeed, unless Congress or the Constitution require otherwise, the Act mandates application of relevant state law even if the basis for jurisdiction is a federal question."); *Watson v. McCabe*, 527 F.2d 286, 288 (6th Cir. 1975) ("Application of the Rules of Decision Act, 28 U.S.C. § 1652 (1970), does not depend on the jurisdictional basis for an action. [citations omitted] The law to be applied by a federal court depends on the nature of the issue under consideration. If the issue is a federal matter, federal law will apply. If the issue concerns a non-federal matter, state substantive law applies.").

---

**DISSENT**

---

ALICE M. BATCHELDER, Circuit Judge, dissenting. Chase Manhattan Bank ("Chase") appeals the order of the bankruptcy court, affirmed by the Bankruptcy Appellate Panel of the Court of Appeals for the Sixth Circuit ("BAP"), permitting the Trustee in Bankruptcy to avoid the debtors' mortgage to Chase because it had not been properly executed. Because I believe that the majority errs on two fronts, I must respectfully dissent.

First, decisional law from Ohio's state courts should control the majority's analysis. But it does not. Instead, a bankruptcy court opinion, which does not control this panel's interpretation of Ohio law, drives the majority's analysis. Second, to the extent that the majority purports to interpret and apply decisional law from Ohio's courts, I believe the majority misreads that decisional law.

The majority acknowledges that the question of whether a mortgage on real property is valid falls squarely within the domain of the law of the state where the property is located. *See Watson v. Kenlick Coal Co., Inc.*, 498 F.2d 1183, 1190 (6th Cir. 1974) ("Property law is, and must be, a creature of state law, with peculiar nuances in each jurisdiction."). In this case, the law is Ohio's. When faced with a question of Ohio law, the majority must interpret and apply that law as would Ohio's state courts. *See C&H Entm't, Inc. v. Jefferson County Fiscal Ct.*, 169 F.3d 1023, 1025 (6th Cir. 1999); 28

facially valid mortgage "carries with it a presumption of validity, and, in order to destroy its effect as a mortgage it must be shown to be defective by the contesters."); *see also Helbling v. Williams (In re Williams)*, 240 B.R. 884, 888-89 (Bankr. N.D. Ohio 1999). Citing *Paramount v. Berk*, Chase argues that the presumption of validity is so strong that Ohio courts have established a per se rule that the mortgagor's testimony standing alone is not sufficient to invalidate a facially valid mortgage. 179 N.E.2d 788 (Ohio App. 1962). Chase concludes that since the Zaptockys' testimony is the only evidence that the mortgage was not properly executed, Simon has not introduced sufficient evidence to demonstrate that the mortgage was not validly executed.

### A. Did the Bankruptcy Court Err by Failing to Apply a Per Se Rule?

Under Ohio law a facially valid mortgage does bear a strong presumption of validity. However, Ohio courts have not explicitly established a per se rule that precludes a party from relying solely on the mortgagor's testimony to establish that a mortgage has been improperly executed. In *Paramount v. Berk*, which the defendant cites, a plaintiff mortgagee challenged the validity of a prior mortgage on the grounds that it was not properly executed. *Id.* The plaintiff presented the testimony of the mortgagors, a husband and wife, who testified that the wife did not sign the mortgage in the presence of the notary or the witnesses, but rather signed the mortgage in the car outside the bank. The Ohio Court of Appeals rejected the evidence, holding that the testimony of the mortgagors "is insufficient in law to overcome the certificate of acknowledgement by the notary." *Id.* The Court stated that, "[s]ince the evidence relating to acknowledgement is confined to the testimony of the mortgagors in this case, it is not sufficient to support a finding contrary to the certificate of acknowledgement and the affirmative testimony of the notary himself." *Id.* at 788-89.

While the *Paramount* case holds that the testimony of mortgagors is not sufficient to overcome the certificate of

acknowledgement, the court's language clearly does not extend to all cases in which a party relies solely on the testimony of the mortgagors to prove that the mortgage was not properly executed. *See Williams*, 240 B.R. at 888 (holding that *Paramount's* per se rule only applies to cases in which the mortgagor's testimony is rebutted by a certificate of acknowledgement).[2] The Ohio Supreme Court has declined to extend the per se rule to any case in which a certificate of acknowledgement was not at issue. *Id.* (citing *Citizens Nat'l Bank in Zanesville v. Denison*, 133 N.E.2d 329 (Ohio St. 1956); *Williamson v. Clarskadden*, 36 Ohio St. 664 (1881)).

In this case, the per se rule is not applicable because the mortgagors' testimony was not rebutted by the certificate of

---

[2] At least one bankruptcy court in the Northern District of Ohio seems to have taken the position that the *Paramount* case created a rule that a mortgagor's testimony standing alone can never overcome a notary's affirmative testimony regarding the attestation of witnesses. *See Salamone v. Ford Consumer Finance*, 231 B.R. 628, 633 (Bankr. N.D. Ohio 1999); *Burnham v. First Union Mortgage Co.*, 231 B.R. 270, 274 (Bankr. N.D. Ohio 1999). Although it is possible to extrapolate this holding from the facts and language of the *Paramount* case, we do not believe that the *Paramount* Court intended to create a new per se rule in its brief per curium opinion, which is only a little over one page in length. This per se rule is not enunciated by the plain language of the court's decision which refers only to "acknowledgement" and it is not supported by any of the cases that the *Paramount* Court cited. *See Ford v. Osborne*, 45 Ohio St. 1, 3 (1887); *Mack v. Edelstein*, 1 Ohio Law Abs. 391 (Ohio App. 1923); *White v. East Ohio Gas Co.*, 30 Ohio Law Abs. 275, 277 (Ohio App. 1938); s*ee also Helbling v. Williams (In re Williams)*, 240 B.R. 884, 887 (Bankr. N.D. Ohio 1999).

Furthermore, even if *Paramount* did establish that a debtor's testimony cannot, standing alone, overcome a notary's affirmative testimony regarding attestation, it is not clear that this holding would be decisive in this case. Although Gary Williams testified that he never closed a loan without two witnesses present, he was unable to remember any of the details of this closing including the identity of the second witness. Although, a positive statement of an inflexible rule is given great weight, it is not clear that Williams' statement constitutes "affirmative testimony" mentioned in *Paramount*.

bona fide purchaser without knowledge. *See Amick v. Woodworth*, 50 N.E. 437, 441 (Ohio St. 1898) (equitable subrogation "is never allowed against an intervening bona fide purchaser without notice . . . nor one who occupies a like position."). Since the Bankruptcy Code gives trustee Simon the rights of a bona fide purchaser without actual knowledge and no constructive knowledge has been established, Simon is entitled to the rights of a subsequent bona fide purchaser without knowledge of the prior mortgage. Accordingly, Chase is not entitled to be subrogated to the rights of Nationsbank.

## VI. Conclusion

For the foregoing reasons, we **AFFIRM** the BAP's judgment.

*v. Centerre Bank Nat'l Ass'n (In re Sandy Ridge Oil Co.)*, 807 F.2d 1332, 1335 (7th Cir. 1986); *McCannon v. Martson*, 679 F.2d 13, 16 (3d Cir. 1982); *In re Kim*, 161 B.R. 831, 837 (BAP 9th Cir. 1993).

Second, although this court has held that the Bankruptcy Code's strong arm clause does not immunize a trustee who has constructive knowledge of a prior mortgage, it is quite clear that Simon did not have constructive knowledge of the Zaptockys' mortgage with Chase. *See Owen -Ames-Kimball Co. v. Mich. Lithographing Co. (In re Mich. Lithographing Co.)*, 997 F.2d 1158, 1159 (6th Cir. 1993) (*per curiam*). At the time that the Zaptockys filed for bankruptcy Ohio law provided that an improperly executed mortgage does not put a subsequent bona fide purchaser on constructive notice. *See Amick v. Woodworth*, 50 N.E. 437, 441 (Ohio 1898); *Thames v. Asia's Janitorial Serv., Inc.*, 611 N.E.2d 948, 954 (Ohio App. 1992).[5] As noted above, the Zaptocky mortgage was not properly executed because its formation was not attested to by two witnesses. Accordingly, Simon did not have constructive notice of the Chase mortgage and is entitled to avoid it as a subsequent bona fide purchaser.

## V.  Is Chase Manhattan Entitled to be Equitably Subrogated to the Rights of Nationsbank?

On appeal, Chase also argues that it is entitled to be subrogated to the rights of the holder of the Zaptockys' first mortgage, Nationsbank. *See Straman v. Rechtine*, 51 N.E. 44, 46 (Ohio St. 1898). However, as the BAP pointed out, the doctrine of equitable subrogation does not apply against a

---

[5]The long standing rule that an improperly executed mortgage does not provide constructive notice has recently been changed by statute. *See* 1999 Ohio Legis. Serv. 5301.234 (Banks-Baldwin). Ohio Revised Code section 5301.234 provides that, beginning on June 30, 1999, a defectively executed but recorded mortgage can be constructive notice to third parties, including bona fide purchasers. However, Section 5301.234 is not applicable in this case because the Zaptockys filed for bankruptcy on April 28, 1998, over one year before this statute was scheduled to take effect. *See Williams*, 240 B.R. at 885.

acknowledgment.  As noted above, the mortgagors alleged that the mortgage was not properly executed because only one witness attested to the signing of the mortgage.  Given that the notary's certificate of acknowledgement does not purport to certify that two witnesses were present when the Zaptockys signed the mortgage, the certification is irrelevant to the factual dispute in this case.[3]  Accordingly, the bankruptcy court did not err by refusing to apply a per se rule.

## B.  Did the Bankruptcy Court Err by Failing to Give Gary William's Testimony the Proper Weight?

In the alternative, Chase argues that the bankruptcy court erred by failing to give the proper weight to Gary Williams' testimony that he adhered to his company's policy of not closing a loan unless two witnesses are present.  Citing *Coshocton National Bank v. Hagans*, Chase asserts that under Ohio law "a positive statement of an inflexible rule always adhered to by a notary or witness must carry great weight in the consideration of their evidence."  178 N.E. 330 (Ohio App. 1931).  Chase alleges that the bankruptcy court did not give Williams' testimony "great weight" and argues that if it had, it would not have found that only one witness was present at the mortgage closing.

Although it is true that a notary's testimony that he always adhered to an inflexible rule is given "great weight," this evidence is not conclusive.  *See Helbling v. Krueger (In re Krueger)*, No. 98-18686, Adv. No. 99-1016, 2000 WL 895601, at *3 (Bankr. N.D. Ohio Jun. 30, 2000) (a notary's testimony that he invariably required a second witness to be present was not conclusive).  In this case, the bankruptcy court credited Williams' testimony that he never closed a loan

---

[3]In accordance with § 5301.01, Mr. Williams's notarial acknowledgement on the mortgage at issue merely certifies that the debtors personally appeared before him and executed the foregoing instrument and "acknowledged that they did examine and read the same and did sign the foregoing instrument, and that the same is their free acts and deed." Ohio Rev. Code Ann. § 5301.01.

unless there were two witnesses.  However, the court also found that this evidence was outweighed by the Trustee's clear and convincing evidence that only one witness had been present at the signing of the Zaptockys' mortgage.  As the bankruptcy court indicated, several factors support this finding.

1. A home refinancing closing is an extraordinary event for the consumer.

2. Where the closing occurs in the home of the refinancing applicant, it can be reasonably expected that the homeowners would have greater cognizance of which individuals were in their personal residence for an extraordinary event such as a closing.

3. The purported second witness, Lloyd Taylor [Taylor Lloyd], is not an individual known to either of the Debtors or by the notary Williams.  In fact, Williams has no personal recollection of this particular closing.

4. The Debtors testified unequivocally, that no one by the name of Taylor [Lloyd] was in their home on February 7, 1997 or at any other point in time.

5. Taylor [Lloyd], according to Williams was not an employee of the First Service Title Agency.

6. Gloria Zaptocky's mother was at the Debtor's residence on the closing date but did not participate in the execution of the closing documents.

*In re Zaptocky*, 231 B.R. at 264.

We agree that the evidence introduced at trial creates a serious doubt as to the validity of Taylor Lloyd's signature. If Williams had brought Lloyd with him to the house to act as a witness, it seems that Williams would at least recognize the name.  On the other hand, if Lloyd had been a friend or neighbor of the Zaptockys, it seems likely that they would know who he was.  The fact that both the Zaptockys and

Williams testified that they do not know who Taylor Lloyd is suggests that a second witness was not present at the closing of the Zaptockys' mortgage.[4]

"A finding of fact is 'clearly erroneous' when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Luper v. Columbia Gas of Ohio, Inc. (In re Carled, Inc.)*, 91 F.3d 811, 813 (6th Cir. 1996).  Given the evidence in this case, we do not believe that the bankruptcy court's finding that clear and convincing evidence demonstrated that only one witness was present at the signing of the Zaptockys' mortgage was clearly erroneous. Accordingly, we affirm the BAP's decision that the Chase mortgage was not properly executed under Ohio law.

### IV.  Is Simon entitled to Avoid the Defectively Executed Mortgage as a Subsequent Bona Fide Purchaser?

As noted above, a bona fide purchaser may only avoid an improperly executed mortgage under Ohio law if he does not have actual or constructive knowledge of that transaction. On appeal, Chase argues that Simon had knowledge of the Zaptockys' mortgage with Chase and, therefore, he cannot avoid the Chase mortgage.  This claim is without merit.

First, given that the strong arm clause of the federal Bankruptcy Code provides trustees with the rights of a hypothetical bona fide purchaser "without regard to any knowledge of the trustee," Simon's actual knowledge does not undermine his right to avoid a prior defectively executed mortgage.  *See* 11 U.S.C. § 544(a); *Sandy Ridge Oil Co., Inc.*

---

[4]It is also worth noting that Gary Williams worked part time for a mortgage company when he gave his testimony in this case and therefore had an interest in vindicating his professional actions.  Although this fact does not completely discredit William's testimony, it certainly supports the bankruptcy court's finding.  *See Helbling v. Krueger (In re Kreuger)*, No. 98-18686, Adv. No. 99-1016, 2000 WL 895601, at *3 (Bankr. N.D. Ohio).