In re Jeanne Ann **DENISON,**
Debtor–Appellant.

**Randall Frank, Chapter 7 Trustee,**
**Plaintiff–Appellee,**

v.

**Nancy A. Kiesel, Defendant–Appellant.**

**Nos. 02–10191–BC, 02–10194–BC.**

United States District Court,
E.D. Michigan,
Northern Division.

March 31, 2003.

James S, Miner, II, Bay City, MI, for Debtor.

James M. Hammond, Darbee, Bosco, Bay City, MI, for Nancy A. Kiesel.

Melanie R. Beyers, John E. Gannon, Lambert, Lesser, Bay City, MI, for Randall L. Frank, Chapter 7 Trustee.

## OPINION AND ORDER REVERSING JUDGMENT OF BANKRUPTCY COURT

LAWSON, District Judge.

The question presented in this appeal from the bankruptcy court is whether a contract right to obtain title to a mobile home upon completion of an installment payment agreement constitutes "reasonably equivalent value" within the meaning of 11 U.S.C. § 548(a)(1)(B)(i) so as to preclude the Trustee from avoiding a sales agreement and recovering the substantial down payment which the debtor paid the mobile home seller. The bankruptcy court held that although the sales contract was valid under Michigan law, because title to the mobile home was not transferred simultaneously with the tender of the down payment under the Michigan Mobile Home Commission Act (MHCA), Mich. Comp. Laws § 125.2301, *et seq.*, the transaction was somehow illusory, lacked value, and was avoidable. Because the law of this Circuit plainly views contract rights as having economic value within the meaning of Section 548(a)(1)(B)(i), the Court must respectfully disagree with the bankruptcy court and reverse its judgment.

### I.

No testimony was taken at the trial of this adversary proceeding; the parties stipulated to the facts before the bankruptcy court, which ruled solely on the basis of the stipulated facts and arguments of counsel.

The undisputed facts disclose that the debtor, Jeanne Ann Denison, was in dire financial straits early in 2001. Her husband had recently been sent to prison for committing criminal sexual conduct against her oldest daughter, her credit was bad, and she had been laid off from her job at Michigan Air Gas on March 30, 2001. Denison contacted the law firm of Miner & Miner and retained James Miner to represent her in divorce and bankruptcy proceedings. She had already decided to give up her home, as the payments, taxes, insurance, and maintenance costs were more than she could afford.

Because she needed a place to live with her children, and no bank would lend her money, Denison and her mother, Nancy Kiesel, the defendant in the adversary proceeding below, arranged for the purchase of a mobile home in the Bangor Township area. Maintaining residence in Bangor Township was important to Denison because its school district has programs that can accommodate one of her children, who has special needs. The parties agreed that Kiesel would secure financing, purchase the mobile home, and then resell it to Denison.

On April 4, 2001, Nancy Kiesel signed an offer to purchase a 1999 Holly Park mobile home in the Shady Rest mobile home park for $20,900. She tendered $200 with the listing broker as an earnest money deposit, and borrowed $20,203 from National City Bank to finance the purchase. At closing on April 17, 2001, Kiesel paid a down payment of $2,051.06 and financed the balance for thirty months with a bank, which took a security interest in the mobile home.

Shortly thereafter, Kiesel's attorney drafted a mobile home purchase agreement entitled "Contract for Sale and Purchase of Mobile Home" to effectuate the transfer of the mobile home to Denison. After Attorney Miner reviewed the document, the parties signed it on May 16, 2001. Upon signing, Denison, who had received $18,500 in severance pay, paid $16,000 to Kiesel as a down payment. The sales contract called for Denison to make monthly payments to Kiesel of approximately $164 to pay off the balance of

$4,900 plus interest, and gave her the exclusive right to possess and occupy the mobile home while not in default. Kiesel was to retain the title to the mobile home until the final payment was made, at which time Kiesel is obliged to convey title to Denison free of the bank's lien.

Denison made the monthly payments according to the sales contract, and occupied the mobile home with her children since the signing of the purchase agreement, but the title has remained in Nancy's name.

Jeanne Denison filed for Chapter 7 bankruptcy protection on July 24, 2001. On September 27, 2001, Randall L. Frank, Chapter 7 Trustee, filed an adversary proceeding against Nancy Kiesel seeking to set aside the mobile home purchase. The proceeding was tried on stipulated facts; the parties agreed that the sole issue was whether Denison had received "reasonably equivalent value" pursuant to 11 U.S.C. § 548(a)(1)(B)(i) for the $16,000 she paid her mother for the mobile home. The primary theory of the Trustee at trial was that reasonably equivalent value was not received because the purchase agreement between Jeanne and Nancy did not include the certification necessary to transfer a mobile home under Michigan state law. The bankruptcy judge was not impressed by this argument, and the trustee has abandoned it on appeal. Instead, the bankruptcy court found that while the transaction was unquestionably valid under Michigan state law, it failed to provide reasonable equivalent value for Jeanne's $16,000 deposit because it only included a promise to transfer title in the future rather than the transfer of title outright.

On July 1, 2002, the bankruptcy court entered judgment in favor of the Trustee on the complaint avoiding the transfer of to the mobile home and permitting the Trustee to recover $16,000 from Nancy Kiesel under 11 U.S.C. § 544 and § 548.

The Trustee's objection to the Debtor's asserted exemption of the mobile home was entered on July 3, 2001. Defendant Nancy Kiesel filed a notice of appeal on July 8, 2001, and Debtor Jeanne Denison did the same on July 11, 2001.

The parties presented argument through counsel in open court on October 16, 2002 and the matter was taken under advisement. The parties have filed supplemental briefs, with the latest one having been received on February 5, 2003 bringing to the Court's attention a recent appellate decision. The matter is now ready for decision.

## II.

In adversary proceedings where the bankruptcy judge makes factual findings, the district court will not set them aside unless they are clearly erroneous, and the appellant can demonstrate "the most cogent evidence of mistake of justice." *In re Baker & Getty Fin. Servs.*, 106 F.3d 1255, 1259 (6th Cir.1997). Conclusions of law are reviewed *de novo*. *In re Zaptocky*, 250 F.3d 1020, 1023 (6th Cir. 2001). When a matter is tried to the bankruptcy court on agreed facts, the lower court need not make factual determinations, and the application of law to the agreed facts is reviewed *de novo*. *Miller v. Amer. Heavy Lift Shipping*, 231 F.3d 242, 247 (6th Cir.2000). The question of whether a particular transaction is avoidable under Section 548 is one of law over which this Court exercises *de novo* review. *In re Cannon*, 277 F.3d 838, 849 (6th Cir.2002).

## A.

The lower court placed heavy reliance on the decision of *In re Adler*, 263 B.R. 406 (Bankr.S.D.N.Y.2001), to provide the linchpin for its finding that the rights created by the mobile home sales contract,

including the obligation to transfer title when all the payments were made, did not amount to "reasonably equivalent value." *Adler* involved the bankruptcy of a securities clearinghouse and a claim by some investors that certain trades in the final hours before the collapse of a securities broker, which were made in order to provide greater protection for their assets under federal deposit insurance programs, were made (or guaranteed) by Adler in exchange for fair value. The appellants argued that Adler, as the clearinghouse, received worthless House Stocks of the insolvent broker which nonetheless had value because they gave Adler the contractual right to force a buy-in from other brokers who had engaged in illegal short-selling of certain securities. The appellants reasoned that ownership of the House Stocks gave Adler the ability to set the price on the short-sold securities and engage in profitable trading. The district court affirmed the bankruptcy court's rejection of this theory, and held that the unperformed promise to deliver securities arising from the obligation of the short-sellers under exchange commission rules was too speculative, since Adler had not "received" the securities themselves, and ownership of the House Stocks merely created a right to demand delivery, but no rights to the securities themselves. 263 B.R. at 466–67. The court held that under Section 548(a)(1)(B), "[t]he requirement that the debtor must have 'received' the value in question expresses a temporal condition demanding an element of contemporaneity in the determination of whether something close to the reasonable equivalence has been exchanged." *Id.* at 467. Moreover, the worth of the short-sold securities itself depended upon a contingency: "in order for Adler to receive the alleged true value, it had to undertake, at some risk, a buy-in whose viability or net yield could not be projected with any degree of certainty at the time of the exchange[, resulting in] a proposition speculative at best." *Id.* at 467.

From this holding, the lower court, at the Trustee's urging, extracted the rule that an executory contract to purchase hard goods, possession of which is transferred to the debtor upon making a down payment, with a promise to receive title documents upon full performance, did not constitute "reasonably equivalent value" for the cash given as a down payment, because title under such an arrangement is not contemporaneously transferred with the debtor's payment. The Court believes that the learned bankruptcy judge reads too much into *Adler's* text.

■■ In order to avoid a transaction under Section 548(a)(1)(B), the court must determine both that the debtor received less than reasonably equivalent value for the transfer or obligation made and that the debtor was insolvent at the time of the transaction or was rendered insolvent by the transaction. *In re Greenfield,* 249 B.R. 856, 858 (Bankr.E.D.Mich.2000). The Trustee correctly notes that "reasonably equivalent value" will lie not lie when the debtor receives only an illusory promise in return for her tender. In *R.M.L.,* 92 F.3d 139 (3d Cir.1996), for example, the Third Circuit recognized that while a future return on an investment could constitute "reasonably equivalent value" for the initial purpose, there must be some "legitimate and reasonable" chance of return. *R.M.L.,* 92 F.3d at 152. The insolvent debtor corporation in that case paid $515,000 in commitment fees toward a loan that imposed so many conditions that both parties knew had very little chance of being closed. *Id.* at 153. Thus, even though the loan transaction, viewed on its face, would have amply met the applicable standard, the parties' almost certain knowledge at the time the fees were paid that

the most important condition would not be met rendered the value of the loan essentially illusory, and therefore not reasonably equivalent to the fees being paid. *Id.* at 153–54.

■ Although *Adler* does state that "the term 'value' [excludes] future considerations," the *Adler* court was also careful to emphasize that Section 548 requires "*an* element of contemporaneity," not a complete transfer at the time the transaction was made. *Id.* at 467 (emphasis added). Furthermore, to the extent that *Adler* could be construed to stand for such a proposition, it would be contrary to the Third Circuit's decision in *R.M.L.*, and, more importantly, the law of this Circuit. *See In re Chomakos,* 69 F.3d 769 (6th Cir.1995). In *Chomakos,* the Chapter 7 trustee sought to recover, as fraudulent transfers, pre-petition gambling losses from the operator of a Las Vegas casino. The trustee argued that because the gambling odds are stacked in favor of the house, the possibility of winning is not a reasonably equivalent investment for the wagers made. *Id.* at 771–72. The court of appeals rejected this contention, as did the bankruptcy court and district court before it. The court reasoned that in a casino subject to state regulation,

> the placing of a bet gives rise to legally enforceable contract rights. These contract rights constitute "property," of course, and at the time which Collier [on Bankruptcy] identifies as "critical"—a time before anyone can know whether the bet will be successful—the property has economic value. The property is not unlike futures contracts purchased on margin. The investor in futures may win big, or his position may be wiped out, but the contractual right to a payoff if the market happens to move the right way at the right time constitutes a value

reasonably equivalent to the money at risk.

*Id.* at 771. Therefore, even though the odds dictated that the petitioners would have almost certainly lost all their money had they gambled long enough, the chance that they could come home with greater sums constituted the return of reasonably equivalent value for their wagers. *Id.* at 772.

As for the property interest acquired by Jeanne Denison in this case, it is worth noting that it, too, gave rise to a legally enforceable contract right. Had her mother subsequently breached the contract, Denison could have brought suit under Michigan law to demand that the contract be specifically performed, *see Stauch v. Daniels,* 240 Mich. 295, 215 N.W. 311 (1927) (holding that sudden increase of value in the land was not a ground for declining specific performance to the purchaser), or for damages occasioned by the breach, including the return of monies previously paid. *Thomas v. Reece,* 333 Mich. 598, 602, 53 N.W.2d 505, 507 (Mich.1952) (finding land contract vendee who had fulfilled his responsibilities to be entitled either to rescind the contract and recover monies paid, or to sue for damages). *Cf. Ladd v. Ford Consumer Finance Co.,* 458 Mich. 876, 586 N.W.2d 404 (1998) (honoring executory contract for purchase of mobile home).

It is true that the MHCA provides the exclusive means of transferring title to mobile homes in Michigan. *See* Mich. Comp. Laws § 125.2330(3) ("After December 31, 1978, a mobile home shall not be sold or transferred except by transfer of the certificate of title for the mobile home pursuant to this act."). *See also In re Kroskie,* 315 F.3d 644, 648 (6th Cir.2003) (holding that the MHCA is by statute the "exclusive" means for transferring a security interest in mobile homes). But noth-

ing in the MHCA renders invalid an installment contract between private parties to sell a mobile home and transfer title upon completion of the payments, nor does the Act diminish the vendee's contract rights to demand performance, provided that title is transferred in accordance with the procedures set forth in the MHCA. Moreover, the parties agreed, and the bankruptcy court found, that the contract was valid as between the parties and created enforceable rights *inter se* under Michigan law. The Trustee does not challenge that finding on appeal.

Neither party appears to dispute that Jeanne Denison was insolvent at the time of this transaction. Nonetheless, the Court concludes that the bankruptcy judge erred in finding that the Debtor failed to receive an exchange of reasonably equivalent value when she paid $16,000 to her mother as a down payment on a mobile home. The governing law of this Circuit makes it clear that reasonably equivalent value need not be provided all at once. In exchange for her tender, Jeanne Denison received possession of the mobile home and a property right, enforceable in contract, to the property itself or its equivalent value. As is the case with gambling proceeds, title need not have been immediately transferred if there was a reasonable chance it would be transferred to Denison in the future. *See Chomakos,* 69 F.3d at 771. The Trustee has not attempted to argue that Jeanne Kiesel was incapable of making the payments at the time the contract was signed, such that neither party could reasonably expect that title would ultimately be transferred. *R.M.L.,* 92 F.3d at 154. The Court concludes, therefore, that Denison did receive reasonably equivalent value for her $16,000 upon execution of the purchase agreement and right to reside in the mobile home.

**B.**

The Trustee argues in the alternative that Kiesel's actions in selling the mobile home to her daughter in exchange for future payments constitute a form of "future support" prohibited by Section 548. This argument can be dispatched without much difficulty. By gaining contractual and property rights in the mobile home at the time of the agreement, Jeanne Kiesel received a concrete economic benefit in exchange for her down payment. She did not provide the $16,000 as part of an informal annuity arrangement; rather, she bought real estate in which she secured a present interest. The fact that the transaction took place with a family member does not render it avoidable "future support" under the Bankruptcy Code.

**III.**

Contract rights to future consideration can provide reasonably equivalent value to a debtor for the purpose of forestalling avoidance of a transaction under 11 U.S.C. § 548(a)(1)(B)(i), particularly where, as here, the debtor receives part performance contemporaneously with payment. There was nothing speculative or contingent about the seller's obligation, and no one has questioned the overall value of the property exchanged or the validity of the purchase price. The finding of the lower court to the contrary was erroneous.

Accordingly, it is **ORDERED** that the judgment of the Bankruptcy Court is **REVERSED.**